MANATT, PHELPS & PHILLIPS, LLP
Jill M. Pietrini, Esq. (Bar No. CA 138335)
  jpietrini@manatt.com
Paul A. Bost, Esq. (Bar No. CA 261531)
  pbost@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

*Attorneys for Plaintiff*
SUMMIT ENTERTAINMENT, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| SUMMIT ENTERTAINMENT, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>B.B. DAKOTA, INC., a California corporation, METROPARK USA, INC., a Delaware corporation, MODCLOTH, INC., a Delaware Corporation, and Does 1-10, inclusive,<br><br>Defendants. | Case No. CV10 4328 GAF (RZx)<br><br>**COMPLAINT FOR FALSE DESIGNATION OF ORIGIN, TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, COPYRIGHT INFRINGEMENT, AND UNFAIR COMPETITION**<br><br>**(Demand For Jury Trial)** |

Plaintiff Summit Entertainment, LLC ("Summit"), for its complaint against defendants B.B. Dakota, Inc. ("B.B. Dakota"), Metropark USA, Inc. ("Metropark"), and Modcloth, Inc. ("Modcloth") (collectively, "Defendants") and Does 1-20, alleges as follows:

## JURISDICTION

1. This action arises under the trademark and anti-dilution laws of the United States, 15 U.S.C. § 1125, *et seq.*; the Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.*; and under the statutory and common law of unfair competition. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and

1  (b), and § 1367, 15 U.S.C. § 1121, 17 U.S.C. § 501.  This action arises under the laws of the United States.

2.  Venue is proper under 28 U.S.C. §§ 1391(b) and (c) in this case because Summit resides in this District, and on information and belief, Defendants are subject to personal jurisdiction in this District, and/or a substantial part of the events or omissions giving rise to property that is the subject of the action is situated in this District.

## PARTIES

3.  Summit is a Delaware limited liability company having its principal place of business in Santa Monica, California.

4.  On information and belief, B.B. Dakota is a California corporation having its principal place of business in Costa Mesa, California.

5.  On information and belief, Metropark is a Delaware corporation having its principal place of business in Los Angeles, California.

6.  On information and belief, Modcloth is a Delaware corporation having its principal place of business in Pittsburgh, Pennsylvania, and does business in this District.

7.  All Defendants are subject to personal jurisdiction in this District.

## FACTS

**Summit's Business, Trademarks, and Copyrights**

8.  Since 1991, Summit and its predecessors have been an active participant in the motion picture industry.  Summit has produced and distributed films and related entertainment products, and has also been involved in motion picture financing, production, and distribution services.

9.  Summit also licenses the trademarks associated with the motion pictures it produces and distributes for use on various items of merchandise, including clothing.

10.  Summit is the producer and distributor of the highly successful

*Twilight* motion picture franchise. Initially, Summit released the extremely successful and popular *Twilight* about a teenage girl, Isabella ("Bella") Swan, who falls in love with a vampire, Edward Cullen. Bella's other suitor in the film is Jacob Black, a werewolf. The film was released in the United States on November 21, 2008. Summit released a second motion picture in the *Twilight* series, *The Twilight Saga: New Moon* ("*New Moon*"), in the United States on November 20, 2009. Summit released *New Moon* for sale and rental on digital versatile disc ("DVD") on March 20, 2010. Summit is set to release the third motion picture in the *Twilight* series, *The Twilight Saga: Eclipse* ("*Eclipse*") on June 30, 2010. All of the motion pictures in the *Twilight* series were heavily promoted months before their release. The motion pictures constituting The *Twilight Saga* series are herein referred to as the "Twilight Motion Pictures."

11. Summit is the owner of the trademark TWILIGHT in block letters, and in a distinctive stylized font (the "stylized TWILIGHT mark") (collectively "the TWILIGHT Marks"). Summit owns a federal registration for TWILIGHT in Classes 41 and 45 (Reg. No. 3,756,560) and a federal registration of TWILIGHT TRACKER in Class 9 (Reg. No. 3,793,131). True and correct copies of these certificates of registration are attached hereto as **Exhibit A**. Summit also owns 35 pending federal trademark applications to register the TWILIGHT Marks for use on various types of goods and services. Summit's stylized TWILIGHT mark is shown below:

twilight

12. Summit has licensed its TWILIGHT trademark to third parties to sell on clothing and other products. Summit's licensees first sold clothing bearing the TWILIGHT mark in September of 2008, and continue to sell such clothing.

13. Summit also owns the trademark BELLA as used for clothing and a variety of other products.

14. Summit is the copyright owner of all publicity, promotional, unit, and special shoot photography relating to the Twilight Motion Pictures. Specifically, Summit owns the copyright in a promotional image depicting the character Bella from the Twilight Motion Pictures ("Bella Image"). The Bella Image is a signature image from the first Twilight Motion Picture. A copy of the Bella Image is attached hereto as **Exhibit B**. Summit has licensed its copyrighted photographs to third parties to promote the Twilight Motion Pictures, as well as clothing and other products related to the Twilight Motion Pictures and bearing the TWILIGHT mark.

15. Summit has filed an application to register its copyright in the Bella Image with the U.S. Copyright Office.

16. Summit owns copyrights in the various other photographs and artwork associated with the Twilight Motion Pictures and screenplays therefor. True and correct copies of the copyright registrations therefor are attached as **Exhibit C**.

**Defendants and Their Infringing Actions**

17. On information and belief, B.B. Dakota is a clothing wholesaler and retailer that sells clothing from its website at <dakotacollective.com> ("B.B. Dakota Website") and distributes its clothes for sale from other retailers' websites and brick and mortar stores.

18. On information and belief, Metropark operates a website at <www.metroparkusa.com> ("Metropark Website") and sells clothing from that website.

19. On information and belief, Metropark operates a vast network of brick-and-mortar retail stores and sells clothing from those retail stores.

20. On information and belief, Modcloth operates a website at <www.modcloth.com> ("Modcloth Website") and sells clothing from that website.

21. In May of 2009, Summit learned that Metropark was promoting and selling jackets under Summit's TWILIGHT trademark on the Metropark Website. Metropark's promotion of the jacket on its Website also included the unauthorized

and unlicensed reproduction of the Bella Image (the "Bella Jacket"). The Metropark Website also used the TWILIGHT trademark in a font identical or confusingly similar to Summit's stylized font.

22. On May 20, 2009, Summit sent Metropark a letter demanding that it cease and desist its trademark and copyright infringement. A true and correct copy of Summit's demand letter to Defendant is attached hereto as **Exhibit D**. Metropark responded to Summit and informed Summit that the Bella Jacket was manufactured and sold to Metropark by B.B. Dakota. Metropark claimed that B.B. Dakota had been granted permission by Summit to use the Bella Image and, thus, Metropark was granted permission to use the Bella Image, as well.

23. In later 2009, Summit learned that Modcloth was promoting and selling the Bella Jacket on the Modcloth Website. Modcloth's promotion of the Bella Jacket on the Modcloth Website also included the unauthorized use of the TWILIGHT trademark and unlicensed reproduction of the Bella Image. The Modcloth Website also used the TWILIGHT trademark in a font identical or confusingly similar to Summit's stylized font.

24. On September 10, 2009, Summit sent Modcloth a letter demanding that it cease and desist its trademark and copyright infringement. A true and correct copy of Summit's demand letter to Modcloth is attached hereto as **Exhibit E**. Modcloth's counsel responded to Summit and informed Summit that the Bella Jacket was manufactured and sold to Metropark by B.B. Dakota. Modcloth's counsel stated that it had referred the matter to B.B. Dakota for its review.

25. Despite Summit's demand letters asserting its rights and Metropark's and Modcloth's infringement thereof, Metropark and Modcloth continued to sell the Bella Jacket and promote their sales by using the TWILIGHT trademark and the Bella Image. Metropark expanded its unlawful activities to include offering the Bella Jacket for sale in its stores and attaching a hangtag bearing the TWILIGHT trademark in its stylized font and the Bella Image to the Bella Jacket. Metropark

also shipped the Bella Jacket pursuant to orders placed on the Metropark Website with an attached hangtag bearing the TWILIGHT trademark in its stylized font and the Bella Image. True and correct copies of photographs the Bella Jacket and the hangtags bearing the TWILIGHT trademark in its stylized font and the Bella Image are attached hereto as **Exhibit F**.

26. Summit later discovered that B.B. Dakota was not only distributing the Bella Jacket, but was also selling the Bella Jacket from the B.B. Dakota Website, on which B.B. Dakota was using the TWILIGHT trademark. B.B. Dakota expanded its sales of the Bella Jackets from the original "lake blue" color to include it in "black," "silver birch," and "forest" colors. On May 20, 2010, Summit sent B.B. Dakota a letter demanding that it cease and desist its trademark and copyright infringement. Therein, Summit established that Summit had never granted B.B. Dakota a license to use the TWILIGHT or BELLA trademarks or a license to use the Bella Image on hangtags or for B.B. Dakota's retailers to use the Bella Image or the TWILIGHT or BELLA trademarks in any manner or manifestation whatsoever. A true and correct copy of Summit's demand letter to B.B. Dakota is attached hereto as **Exhibit G**. B.B. Dakota's counsel responded to Summit and informed Summit that B.B. Dakota was investigating the matter and would further respond after doing so. Summit has not received any further correspondence from B.B. Dakota. B.B. Dakota is still offering the Bella Jacket for sale from the B.B. Dakota Website and continues to use without authorization the TWILIGHT trademark on its Website.

### FIRST CAUSE OF ACTION

**(False Designation of Origin – 15 U.S.C. § 1125(a))**

27. Summit repeats and realleges each and every allegation of paragraphs 1 through 26, above, as though fully set forth herein.

28. Defendants' actions as alleged herein constitute a false designation of origin, affiliation or endorsement in violation of 15 U.S.C. § 1125(a).

29. The use of Summit's TWILIGHT and BELLA trademarks and the Bella Image by Defendants constitute a false designation of origin and a false description or representation that wrongfully and falsely designates the Bella Jacket as originating from Summit, or being associated or affiliated with or authorized or endorsed by Summit.

30. As a direct and proximate result of Defendants' wrongful acts, Summit has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business reputation, and goodwill. Defendants will continue to use and/or will restart the use of, unless restrained, the TWILIGHT and BELLA marks and the Bella Image and will cause irreparable damage to Summit. Summit has no adequate remedy at law and is entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in further acts of false designation of origin, affiliation or endorsement.

31. Summit is further entitled to recover from Defendants the actual damages that it sustained and/or is likely to sustain as a result of Defendants' wrongful acts. Summit is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to sustain by reason of Defendants' acts of false designation of origin affiliation or endorsement.

32. Summit is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of its wrongful acts. Summit is presently unable to ascertain the extent of the gains, profits, and advantages that Defendants have realized by reason of its acts of false designation of origin affiliation or endorsement.

33. Because of the willful nature of Defendants' wrongful acts, Summit is entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117 and destruction of the Bella Jacket under 15 U.S.C. § 1118.

34. Summit is also entitled to recover its attorneys' fees and costs of suit

pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### (Trademark Infringement)

35. Summit repeats and realleges each and every allegation of paragraphs 1 through 34, above, as though fully set forth herein.

36. Defendants have used in commerce, without Summit's permission, the TWILIGHT and BELLA marks in a manner that is likely to cause confusion with respect to the source and origin of the Bella Jacket and is likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, or association of Summit with Defendants and/or their products.

37. Defendants' acts constitute infringement of the TWILIGHT and BELLA marks in violation of the common law, and the TWILIGHT mark under 15 U.S.C. § 1114.

38. As a direct and proximate result of Defendants' wrongful acts, Summit has suffered and continues to suffer and/or is likely to suffer damage to its trademark, business reputation, and goodwill. Defendants will continue to use and/or will restart the use of, unless restrained, the TWILIGHT and BELLA marks and will cause irreparable damage to Summit. Summit has no adequate remedy at law and is entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in further acts of infringement.

39. Summit is further entitled to recover from Defendants the actual damages that it sustained and/or is likely to sustain as a result of Defendants' wrongful acts.

40. Summit is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts.

41. Because of the willful nature of Defendants' wrongful acts, Summit is

entitled to an award of punitive damages under the common law, and treble damages and increased profits under 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

### (Dilution--15 U.S.C.§ 1125(c); Cal. Bus. & Prof. Code § 14330)

42. Summit repeats and realleges each and every allegation of paragraphs 1 through 41, above, as though fully set forth herein.

43. Summit has used the TWILIGHT mark to identify its products relating to the Twilight Motion Pictures before Defendants began promoting and selling the Bella Jacket or otherwise used the TWILIGHT mark. The TWILIGHT mark is inherently distinctive and has acquired distinction through Summit's extensive, continuous, and exclusive use of the TWILIGHT mark.

44. The TWILIGHT mark is famous and distinctive within the meaning of 15 U.S.C. §§ 1125(c)(1) and 1127 and Cal. Bus. & Prof. Code § 14330.

45. Defendants' use of the TWILIGHT mark is likely to dilute the distinctive quality of Summit's mark in violation of 15 U.S.C. § 1125(c) and Cal. Bus. & Prof. Code § 14330.

46. Defendants' acts complained of herein are likely to damage Summit irreparably. Summit has no adequate remedy at law for such wrongs and injuries. The damage to Summit includes harm to its trademarks, goodwill, and reputation that money cannot compensate. Summit is, therefore, entitled to a preliminary and permanent injunction enjoining Defendants' use of the TWILIGHT mark in connection with the promotion, advertisement and sale of any goods by Defendants.

47. Summit is further entitled to recover from Defendants their actual damages sustained by Summit as a result of Defendants' wrongful acts. Summit is presently unable to ascertain the full extent of the monetary damages it has suffered by reason of Defendants' acts of dilution.

48. Summit is further entitled to recover from Defendants the gains, profits, and advantages Defendants have obtained as a result of their wrongful acts.

Summit is presently unable to ascertain the extent of the gains, profits and advantages Defendants have realized by reason of Defendants' willful acts of dilution.

49. Because of the willful nature of Defendants' actions, Summit is entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118.

## FOURTH CAUSE OF ACTION
### (Copyright Infringement)

50. Summit repeats and realleges each and every allegation of paragraphs 1 through 49, above, as though fully set forth herein.

51. The Bella Image is an original work of authorship and is a copyrightable subject matter under the laws of the United States. The Bella Image was fixed in a tangible medium by development of the photograph and/or uploading to a hard drive. The Bella Image is a promotional image for *Twilight* and is the subject of a valid application for copyright registration, a true and correct copy of which is attached hereto as **Exhibit H**.

52. Summit is the copyright owner of the Bella Image, and all other artwork and copyrighted material associated with the Twilight Motion Pictures. At all times relevant to the complaint, Summit is and has been the sole exclusive authorized licensor of the Bella Image in the United States in connection with the issuance of licenses for use of the Bella Image.

53. Defendants had access to the Bella Image because the Bella Image was used by Summit in its extensive promotional efforts for the *Twilight* Motion Picture, and B.B. Dakota and Metropark asked permission of Summit to use, on a limited basis, the Bella Image on their respective websites.

54. Defendants have violated Summit's exclusive rights in and to the Bella Image by unlawfully using, reproducing, and distributing the Bella Image on hangtags, on their Websites, and in other promotional activities, including, but not limited to, email communications to prospective consumers.

55. Upon information and belief, Defendants were at all material times aware that their use of the Bella Image, in the absence of a valid license agreement, would constitute copyright infringement. Summit's permission to allow Metropark and B.B. Dakota to use the Bella Image on their respective websites was limited in nature and was revoked in May 2009. B.B. Dakota's and Metropark's use of the Bella Image was and continues to be well outside the scope of the limited permission granted it by Summit, and any permission granted by Summit to B.B. Dakota to use the Bella Image was terminated when Summit informed Metropark that its use of the Bella Image was unauthorized and unlicensed in May 2009. Modcloth was never granted any permission to use the Bella Image or the TWILIGHT or BELLA trademarks. None of the Defendants were granted permission to use any other artwork or copyrighted material associated with the Twilight Motion Pictures.

56. Summit is informed and believes and on that basis alleges that Defendants had full knowledge that their acts are wrongful and unlawful and have continued to infringe said copyright, throughout the United States and various other territories of the world. Defendants' respective infringing acts were and continue to be committed willfully.

57. By reason of the foregoing, Summit has suffered damages in an amount to be determined at trial, and is entitled, at its election, to either (a) all damages suffered by Summit, along with all gains, profits and advantages derived by Defendants from the acts of infringement, plus exemplary and punitive damages in amounts to be proven at trial, or (b) statutory damages as provided for in the Copyright Act of the United States.

58. Summit is also entitled to attorneys' fees under the Copyright Act.

### FIFTH CAUSE OF ACTION
### (Statutory and Common Law Unfair Competition)

59. Summit repeats and realleges each and every allegation of paragraphs 1

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

through 58, above, as though fully set forth herein.

60. By reason of the foregoing, Defendants have been, and are, engaged in "unlawful, unfair or fraudulent business practices" in violation of §§ 17200 *et seq.* of the California Bus. & Prof. Code and acts of unfair competition in violation of the common law.

61. Defendants' acts complained of herein have damaged and will continue to damage Summit irreparably. Summit has no adequate remedy at law for these wrongs and injuries. The damage to Summit includes harm to its trademarks, goodwill, and reputation in the marketplace that money cannot compensate. Summit is therefore entitled to: (a) injunctive relief restraining and enjoining Defendants and their agents, servants, employees, and attorneys, and all persons acting thereunder, in concert with, or on their behalf, from using the TWILIGHT or BELLA marks, any colorable imitation or variation thereof, or any mark, name, symbol, or logo which is confusingly similar thereto, in connection with the marketing or sale of any goods or services by Defendants; (b) injunctive relief restraining and enjoining Defendants and their agents, servants, employees, and attorneys, and all persons acting thereunder, in concert with, or on their behalf, from reproducing copyrighted photographs owned by Summit in connection with the marketing or sale of any goods or services by Defendants; (c) Summit's actual damages sustained as a result of Defendants' wrongful acts; (d) an accounting of Defendants' profits from their sales of the Bella Jacket and any other products bearing the TWILIGHT and BELLA marks or any other goods which make use of the TWILIGHT or BELLA marks; (e) the award of Defendants' unjust profits, as well as sums sufficient to compensate Summit for all harm suffered as a result of Defendants' conduct; and (f) punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Summit prays that this Court enter judgment against Defendants as follows:

1. Finding that Defendants have violated 15 U.S.C. § 1125(a) and the common law, have infringed the TWILIGHT and BELLA trademarks under the common law and infringed the TWILIGHT trademark under 15 U.S.C. § 1114, have infringed Summit's copyright under 17 U.S.C. § 501, have violated 15 U.S.C. § 1125(c)(1) and Cal. Bus. & Prof. Code § 14330, violated Cal. Bus. & Prof. Code § 17200 and the common law by engaging in unlawful, unfair, and fraudulent business practices;

2. Ordering that Defendants and their subsidiaries, officers, agents, servants, directors, employees, servants, partners, representative, assigns, successors, related companies, and attorneys and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined preliminarily during the pendency of this action and permanently thereafter from:

    a. Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling the Bella Jacket or any other goods bearing the TWILIGHT or BELLA marks or any other mark, name, symbol, or logo which is likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any goods that Defendants caused to enter the stream of commerce are sponsored, licensed, or endorsed by Summit, are authorized by Summit, or are connected or affiliated in some way with Summit or the *Twilight* movie;

    b. Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling the Bella Jacket or any other goods bearing the TWILIGHT or BELLA marks or any other mark, name, symbol, or logo that is a copy or colorable imitation of, incorporates, or is confusingly similar to the TWILIGHT or BELLA marks;

    c. Falsely implying Summit's endorsement of Defendants' goods or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Summit and from otherwise

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1 interfering with, or injuring the TWILIGHT or BELLA marks or the goodwill
2 associated therewith;
3     d. Copying, displaying, featuring, or using the Bella Image
4 or any other copyrightable subject matter from the TWILIGHT Motion Pictures, or
5 any works substantially similar thereto, or engaging in any act in violation of
6 Summit's copyrights;
7     e. Engaging in any act which is likely to dilute the
8 distinctive quality of the TWILIGHT mark and/or injures Summit's business
9 reputation;
10     f. Representing or implying that Defendants are in any way
11 sponsored by, affiliated with, or endorsed or licensed by Summit; or
12     g. Knowingly assisting, inducing, aiding, or abetting any
13 other person or business entity in engaging in or performing any of the activities
14 referred to in paragraphs 2(a) to (f) above.
15     3. Ordering that Summit is the exclusive owner of the TWILIGHT and
16 BELLA marks and that such marks are valid;
17     4. Ordering that Summit is the exclusive owner of the copyright in the
18 Bella Image and that such copyright is valid.
19     5. Ordering that Defendants be required to deliver to Summit for
20 destruction all Bella Jackets, hangtags, and/or promotional artwork which bear the
21 TWILIGHT or BELLA marks or the Bella Image or any other trademarks, names,
22 images logo, trade dress, or packaging that are confusingly or substantially similar
23 to the TWILIGHT or BELLA marks, or the Bella Image;
24     6. Granting an award of damages suffered by Summit according to proof
25 at the time of trial;
26     7. Ordering that Defendants account to Summit for any and all profits
27 earned as a result of Defendants' acts of infringement in violation of Summit's
28 rights under the Lanham Act, the Copyright Act, Cal. Bus. & Prof. Code § 17200,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

*et seq.*, and the common law;

8.   Granting an award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

9.   Granting an award of statutory damages pursuant to 17 U.S.C. § 504(c);

10.  Granting an award of punitive damages for the willful and wanton nature of Defendants' aforesaid acts;

11.  For pre-judgment interest on any recovery by Summit;

12.  Granting an award of Summit's costs, expenses, and reasonable attorney's fees; and

13.  Granting such other and further relief as is just and proper.

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

Dated: June 11, 2010

By: _____
Jill M. Pietrini
Paul A. Bost
*Attorneys for Plaintiff*
SUMMIT ENTERTAINMENT, LLC

## JURY DEMAND

Summit demands a trial by jury of all issues triable by jury.

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

Dated: June 11, 2010

By: _____
Jill M. Pietrini
Paul A. Bost
*Attorneys for Plaintiff*
SUMMIT ENTERTAINMENT, LLC

41396781.2