Jeffrey L. Van Hoosear (SBN: 147,751)
jvh@kmob.com
Lynda J. Zadra-Symes (SBN: 156,511)
ljs@kmob.com
Cheryl T. Burgess (SBN 250,101)
ctb@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Tel: (949) 760-0404
Fax: (949) 760-9502

Attorney for Defendant/Counterclaimant
B.B. DAKOTA, INC.

FILED
2010 AUG -6  PM 3:38
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY _____

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SUMMIT ENTERTAINMENT, LLC<br><br>Plaintiff,<br><br>v.<br><br>B.B. DAKOTA, INC., METROPARK USA, INC., MODCLOTH, INC. and DOES 1 -10,<br><br>Defendants.<br>──────────────<br>B.B. DAKOTA, INC.<br><br>Counterclaimant<br><br>v.<br><br>Summit Entertainment, LLC,<br><br>Counterdefendant. | Civil Action No.<br>CV-10-4328-GAF (RZx)<br><br>**DEFENDANT B.B. DAKOTA, INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**<br><br>Hon. Judge Gary A. Feess<br><br>**DEMAND FOR JURY TRIAL** |

Defendant B.B. Dakota, Inc., ("B.B. Dakota") hereby answers the allegations of the Complaint of Summit Entertainment, LLC ("Summit") as follows:

### JURISDICTION

1.      B.B. Dakota admits that this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and (b), and § 1367, 15 U.S.C. § 1121, 17 U.S.C. § 501 over actions arising under the trademark and anti-dilution laws of the United States, 15 U.S.C. § 1125, et seq.; the Copyright Act of 1976, as amended, 17 U.S.C. § 101, et seq; and under the statutory and common law of unfair competition, but otherwise denies paragraph 1of the Complaint.

2.      B.B. Dakota admits that it is subject to personal jurisdiction in this District, but otherwise denies paragraph 2 of the Complaint.

### PARTIES

3.      B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 3 of the Complaint, and therefore denies those allegations.

4.      B.B. Dakota admits the allegations of Paragraph 4 of the Complaint.

5.      B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 5 of the Complaint, and therefore denies those allegations.

6.      B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 6 of the Complaint, and therefore denies those allegations.

7.      B.B. Dakota admits that it is subject to personal jurisdiction in this District. B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 7 of the Complaint, and therefore denies those allegations.

## FACTS

### Summit's Business, Trademarks, and Copyrights

8.   B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 8 of the Complaint, and therefore denies those allegations.

9.   B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 9 of the Complaint, and therefore denies those allegations.

10.   B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 10 of the Complaint, and therefore denies those allegations.

11.   B.B. Dakota admits that Exhibit "A" purports to be copies of certificates of registration for Trademark Registration Nos. 3,756,560 and 3,793,131. B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 11 of the Complaint, and therefore denies those allegations.

12.   B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 12 of the Complaint, and therefore denies those allegations.

13.   B.B. Dakota denies that Summit owns the trademark BELLA as used for clothing. B.B. Dakota it is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 13 of the Complaint, and therefore denies those allegations.

14.   B.B. Dakota admits that Exhibit "B" purports to be a copy of an image of the character Bella wearing a BB. Dakota jacket. B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 14 of the Complaint, and therefore denies those allegations.

-2-

15.     B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 15 of the Complaint, and therefore denies those allegations.

16.     B.B. Dakota admits that Exhibit "C" purports to be copies of copyright registrations.     B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 16 of the Complaint, and therefore denies those allegations.

**Defendants and Their Infringing Actions**

17.     Responding to paragraph 17 of the Complaint, B.B. Dakota admits that it is a clothing wholesaler and retailer that sells clothing from, among other channels, its website, dakotacollective.com, and distributes its clothes for sale from other retailers' websites and brick and mortar stores.  B.B. Dakota denies all remaining allegations of paragraph 17.

18.     B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 18 of the Complaint, and therefore denies those allegations.

19.     B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 19 of the Complaint, and therefore denies those allegations.

20.     B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 20 of the Complaint, and therefore denies those allegations.

21.     B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 21 of the Complaint, and therefore denies those allegations.

22.     B.B. Dakota admits that Exhibit "D" is a copy of a letter dated May 20, 2009 and is addressed to Metropark.  B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the remaining

allegations of Paragraph 22 of the Complaint, and therefore denies those allegations.

23.    B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 23 of the Complaint, and therefore denies those allegations.

24.    B.B. Dakota admits that Exhibit "E" is a copy of a letter dated September 10, 2009 and is addressed to Modecloth. B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 24 of the Complaint, and therefore denies those allegations.

25.    B.B. Dakota admits that Exhibit "F" purports to be copies of photographs of jackets and hangtags bearing an image. B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 25 of the Complaint, and therefore denies those allegations.

26.    Responding to paragraph 26 of the Complaint, B.B. Dakota admits that Exhibit "G" is a copy of a letter dated May 20, 2010 addressed to B.B. Dakota. B.B. Dakota admits that it distributes and sells the jacket worn by the character Bella in the original Twilight movie in the original "lake blue" color worn by Bella as well as in "black," "silver'" "birch," and "forest" colors, and that such sales began before Bella appeared in the Twilight movie wearing the jacket. B.B. Dakota admits that its counsel responded to Summit's demand letter indicating that it was investigating the matter and would further respond after doing so. B.B. Dakota is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 26 of the Complaint, and therefore denies those allegations.

/ / /

/ / /

-4-

## FIRST CAUSE OF ACTION

### (False Designation of Origin – 15 U.S.C. § 125(a))

27.    B.B. Dakota repeats and realleges its responses to the allegations in Paragraphs 1 through 26 of the Complaint as though fully set forth herein.

28.    B.B. Dakota denies the allegations of Paragraph 28.

29.    B.B. Dakota denies the allegations of Paragraph 29.

30.    B.B. Dakota denies the allegations of Paragraph 30.

31.    B.B. Dakota denies the allegations of Paragraph 31.

32.    B.B. Dakota denies the allegations of Paragraph 32.

33.    B.B. Dakota denies the allegations of Paragraph 33.

34.    B.B. Dakota denies the allegations of Paragraph 34.

## SECOND CAUSE OF ACTION

### (Trademark Infringement)

35.    B.B. Dakota repeats and realleges its responses to the allegations in Paragraphs 1 through 34 of the Complaint as though fully set forth herein.

36.    B.B. Dakota denies the allegations of Paragraph 36.

37.    B.B. Dakota denies the allegations of Paragraph 37.

38.    B.B. Dakota denies the allegations of Paragraph 38.

39.    B.B. Dakota denies the allegations of Paragraph 39.

40.    B.B. Dakota denies the allegations of Paragraph 40.

41.    B.B. Dakota denies the allegations of Paragraph 41.

## THIRD CAUSE OF ACTION

### (Dilution—15 U.S.C. § 1125(c); Cal. Bus. & Prof. Code § 14330)

42.    BB. Dakota repeats and realleges its responses to the allegations in Paragraphs 1 through 41 of the Complaint as though fully set forth herein.

43.    B.B. Dakota denies the allegations of Paragraph 43.

44.    B.B. Dakota denies the allegations of Paragraph 44.

45.    B.B. Dakota denies the allegations of Paragraph 45.

46.    B.B. Dakota denies the allegations of Paragraph 46.

47.    B.B. Dakota denies the allegations of Paragraph 47.

48.    B.B. Dakota denies the allegations of Paragraph 48.

49.    B.B. Dakota denies the allegations of Paragraph 49.

## FOURTH CAUSE OF ACTION

### (Copyright Infringement)

50.    BB. Dakota repeats and realleges its responses to the allegations in Paragraphs 1 through 49 of the Complaint as though fully set forth herein.

51.    B.B. Dakota denies the allegations of Paragraph 51.

52.    B.B. Dakota denies the allegations of Paragraph 52.

53.    B.B. Dakota admits that it asked for and received permission from Summit to use an image on its website and on the Metropark website.  B.B. Dakota denies the remaining allegations of Paragraph 53.

54.    B.B. Dakota denies the allegations of Paragraph 54.

55.    B.B. Dakota denies the allegations of Paragraph 55.

56.    B.B. Dakota denies the allegations of Paragraph 56.

57.    B.B. Dakota denies the allegations of Paragraph 57.

58.    B.B. Dakota denies the allegations of Paragraph 58.

## FIFTH CAUSE OF ACTION

### (Statutory and Common Law Unfair Competition)

59.    BB. Dakota repeats and realleges its responses to the allegations in Paragraphs 1 through 58 of the Complaint as though fully set forth herein.

60.    B.B. Dakota denies the allegations of Paragraph 60.

61.    B.B. Dakota denies the allegations of Paragraph 61.

## AFFIRMATIVE DEFENSES

Further answering the Complaint, B.B. Dakota pleads the following affirmative defenses:

///

### First Affirmative Defense

62.    Each of Plaintiff's claims fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

63.    B.B. Dakota was licensed by Plaintiff to engage in the allegedly infringing conduct.

### Third Affirmative Defense

64.    Plaintiffs' claims are barred under the doctrine of fraud and or unclean hands.

### Fourth Affirmative Defense

65.    Plaintiffs' claims are barred under the doctrines of acquiescence, waiver, laches, delay and/or estoppel.

### Fifth Affirmative Defense

66.    Plaintiffs' claims fail because they have abandoned any purported trademark rights asserted against B.B. Dakota.

### Sixth Affirmative Defense

67.    Plaintiffs' claims fail because one or more of Plaintiffs' asserted trademarks are not inherently distinctive and have not acquired distinction through secondary meaning.

### Seventh Affirmative Defense

68.    Plaintiffs' claims fail because B.B. Dakota's actions constitute fair use.

### Eight Affirmative Defense

69.    Plaintiffs' claim are barred by virtue of Plaintiffs' fraud on the Patent and Trademark Office, as described in B.B. Dakota's Third counterclaim, below.

/ / /

/ / /

### Ninth Affirmative Defense

70.     Plaintiffs' dilution claims fail because Plaintiff is not the owner of a famous mark.

### Tenth Affirmative Defense

71.     Plaintiffs' alleged copyrights are invalid and/or unenforceable.

### Eleventh Affirmative Defense

72.     Plaintiff is not entitled to statutory damages under 17 U.S.C. § 504(c)as the alleged infringing activities occurred prior to the application for registration and the application was not filed within three months of first publication of the alleged copyrighted work.

### PRAYER FOR RELIEF

WHEREFORE, B.B. Dakota prays as follows:

A.     That Summit take nothing by way of his Complaint, and that the same be dismissed in its entirety, with prejudice;

B.     That the Court declare Plaintiff's purported trademarks abandoned;

C.     That the Court declare Plaintiff's purported copyrights invalid and/or unenforceable;

D.     That B.B. Dakota be awarded their attorneys' fees and costs in defending this action, including expert fees;

E.     That the Court award such other and further relief as it may deem just and proper.

### COUNTERCLAIMS

Defendant/Counterclaimant, Defendant B.B. Dakota, Inc., ("B.B. Dakota") hereby sets forth the following Counterclaims against Plaintiff/Counterdefendant Summit Entertainment, LLC ("Summit").

### JURISDICTION AND VENUE

1.     The claims for relief set forth in B.B. Dakota's Counterclaims arise under the trademark laws of the United States, 15 U.S.C. §§ 1051 et seq. and §

-8-

1125(a)., under California Business & Professional Code § 17200 et seq, and under the common law of the State of California.

2.     The Court has subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b) and 1367(a).

3.     Venue and personal jurisdiction over the Plaintiff/Counterclaim-Defendants is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and by Summit's choice of forum.

## PARTIES

4.     B.B. Dakota is a corporation organized and existing under the laws of California, having a principal place of business in Costa Mesa, CA.

5.     Based on information and belief, Summit is a Delaware limited liability company having a principal place of business in Santa Monica, CA.

## ALLEGATIONS FOR ALL CLAIMS OF RELIEF

6.     B.B. Dakota realleges Paragraphs 1 - 72 of its Answer and Paragraphs 1 - 5 of its Counterclaims as if set forth specifically herein.

7.     B.B. Dakota is engaged, and, at all times relevant to the matters alleged in the Counterclaim, was engaged, in the business of manufacturing, distributing, and selling clothing.

8.     B.B. Dakota is the owner of all rights in the design of its Nicola jacket.   The Nicola jacket features a combination of various characteristics constituting a distinctive trade dress (hereinafter "B.B. Dakota's Trade Dress"). B.B. Dakota's Trade Dress is non-functional and protectable.

9.     By virtue of B.B. Dakota's extensive sales and promotion of its Nicola jacket over several years, B.B. Dakota's Trade Dress has developed secondary meaning in the marketplace.  Consumers now recognize B.B. Dakota as the source of origin of the Nicola jacket.  B.B. Dakota's Trade Dress is extremely valuable to B.B. Dakota as an identifier of its products, B.B. Dakota's

quality goods, and of the substantial customer goodwill that B.B. Dakota has earned over many years in the market.

10.   Summit is engaged in the business of licensing the trademarks associated with the motion pictures it produces and distributes for use on various items of merchandise, including clothing.

11.   B.B. Dakota's Nicola jacket was worn by the character Bella Swan ("Bella") in the original Twilight motion picture ("Twilight movie").

12.   B.B. Dakota is informed and believes, and on that basis alleges, that without permission or authority from B.B. Dakota, Summit has infringed B.B. Dakota's Trade Dress in interstate commerce by using, or licensing others to use, images of Bella wearing B.B. Dakota's Nicola jacket in advertising and promotional materials for the Twilight movie and its sequels, as well as in connection with products based on the Bella character from the Twilight movie.

13.   B.B. Dakota is informed and believes, and on that basis alleges, that Summit's unauthorized use of B.B. Dakota's Trade Dress is intended to trade upon the goodwill and substantial recognition associated with B.B. Dakota's Nicola jacket.

14.   B.B. Dakota is informed and believes, and on that basis alleges, that Summit is using B.B. Dakota's Trade Dress in an attempt to associate itself with B.B. Dakota or otherwise trade upon B.B. Dakota's reputation.

15.   B.B. Dakota is informed and believes, and on that basis alleges, that Summit's use of B.B. Dakota's Trade Dress is designed to cause confusion, mistake or deception.

16.   B.B. Dakota is informed and believes, and on that basis alleges, that Summit's acts are designed to trade upon B.B. Dakota's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Summit's Products are associated with, sponsored by or approved by B.B. Dakota, when they are not.

17.   By virtue of the acts complained of herein, Summit has created a likelihood of injury to B.B. Dakota's business reputation, caused a strong likelihood of consumer confusion as to the source of origin or relationship of B.B. Dakota's and Summit's goods , and has otherwise competed unfairly with B.B. Dakota.

18.   B.B. Dakota is informed and believes, and on that basis alleges, that Summit's acts complained of herein are willful and deliberate.

19.   Summit's acts complained of herein have caused damage to B.B. Dakota in an amount to be determined at trial, and such damages will continue to increase unless Summit is enjoined from its wrongful actions.

20.   Summit's acts complained of herein have caused B.B. Dakota to suffer irreparable injury to its business.  B.B. Dakota will suffer substantial loss of goodwill and reputation unless and until Summit is preliminarily and permanently enjoined from the wrongful actions complained of herein.

## FIRST COUNTERCLAIM

(False Designation Of Origin Under 15 U.S.C. § 1125(a))

21.   Paragraphs 1 - 7 2 of its Answer and Paragraphs 1 - 2 0 of its Counterclaims as if set forth specifically herein.

22.   This is an action for trade dress infringement and false designation of origin arising under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

23.   Jurisdiction is founded on 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).  Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391.

24.   Summit created a false designation of origin by using or licensing others to use in commerce, without B.B. Dakota's permission, B.B. Dakota's Trade Dress in connection with advertising and promotional materials for the Twilight movie and its sequels, as well as in connection with products based on the Bella character from the Twilight movie.  Summit did so with intent to trade

-11-

upon B.B. Dakota's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Summit's products are associated with, sponsored by or approved by B.B. Dakota, when they are not.

25.    B.B. Dakota is informed and believes, and on that basis alleges, that Summit had actual knowledge of B.B. Dakota's ownership and prior use of its B.B. Dakota Trade dress, and without the consent of B.B. Dakota, has willfully violated 15 U.S.C. § 1125(a).

26.    Summit's aforementioned acts have injured B.B. Dakota and damaged B.B. Dakota in an amount to be determined at trial.

27.    By its actions, Summit has irreparably injured B.B. Dakota. Such irreparable injury will continue unless Summit is preliminarily and permanently enjoined by this Court from further violation of B.B. Dakota's rights, for which B.B. Dakota has no adequate remedy at law.

## SECOND COUNTERCLAIM

### (Statutory and Common Law Unfair Competition)

28.    Paragraphs 1-72 of its Answer and Paragraphs 1 - 27 of its Counterclaims as if set forth specifically herein.

29.    This is an action for unfair competition arising under the Cal. Bus. Prof. Code § 17200, *et seq* and the common law of the State of California.

30.    Jurisdiction is founded on 28 U.S.C. §§ 1338(b) and 1367(a). Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391.

31.    By virtue of the acts complained of herein, Summit has intentionally caused a likelihood of confusion among the consuming public in this Judicial District and elsewhere and has unfairly competed in violation of Cal. Bus. Prof. Code § 17200, *et seq*. and the common law of the State of California.

/ / /

32. Summit's aforementioned acts have injured B.B. Dakota and damaged B.B. Dakota in an amount to be determined at trial.

33. By its actions, Summit has irreparably injured B.B. Dakota. Such irreparable injury will continue unless Summit is preliminarily and permanently enjoined by this Court from further violation of B.B. Dakota's rights, for which B.B. Dakota has no adequate remedy at law.

34. Summit's willful acts of unfair competition under California common law constitute fraud, oppression and malice. Accordingly, B.B. Dakota is entitled to exemplary damages pursuant to Cal. Civ. Code Section § 3294(a).

## THIRD COUNTERCLAIM

(Petition for Cancellation)

35. Paragraphs 1-72 of its Answer and Paragraphs 1 - 34 of its Counterclaims as if set forth specifically herein.

36. This is a claim for cancellation of U.S. Registration No. 3,756,560 arising under the Federal Trademark Laws of the United States, 15 U.S.C. §§ 1051 *et seq.*

37. On June 30, 2008 Summit filed an application for the alleged mark TWILIGHT for "Ongoing television programs, motion pictures, providing information relating to motion pictures, television programs, literary works, and licensed merchandise via a website" pursuant to Section 1(a) of the Trademark Act based on use in commerce of the alleged mark in connection with goods in International Class 041. This application was assigned U.S. Serial No. 77511175 (the "'175 Application"). The '175 Application was registered on March 9, 2010 and was assigned U.S. Registration No. 1,954,736 (the "'736 Registration").

38. On June 30, 2008, in making the '175 Application, Summit, through its designated Attorney, made a verified Declaration. In this

-13-

Declaration, which was a part of the '175 Application, the signatory declared that "false statements, and the like, may jeopardize the validity of the application or any resulting registration," and declared that "all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true."

39.   On July 17, 2008, in making the '175 Application, Ronald Hohauser, Chief Financial Officer for Summit, made a verified Declaration.  In this Declaration, which was a part of the '175 Application, the signatory declared that "(1) he is the Chief Financial Officer of Applicant, Summit Entertainment, LLC; (2) the facts set forth in the trademark application to register TWILIGHT submitted via electronic means with the U.S. Patent & Trademark Office are true; (3) all statements made of his knowledge are true; and (4) all statements made on information and belief are believed to be true."

40.   On March 2, 2009, in response to an Office Action, Summit, through its designated Attorney, requested to amend the identification of services to "'Entertainment in the nature of on-going dramatic television programs, production and distribution of motion pictures, providing information relating to motion pictures, television programs and literary works' in Class 41, and 'licensing of merchandise associated with motion pictures; providing online information on the licensing of merchandise associated with motion pictures' in Class 45."

41.   B.B. Dakota is informed and believes and, on that basis, alleges that as of June 30, 2008, Summit was aware that the mark TWILIGHT had not been used in connection with "Ongoing television programs", and "providing information relating to ... television programs via a website," and made the statement, through its designated Attorney, to the trademark office with awareness of its falsity.

///

42. B.B. Dakota is informed and believes and, on that basis, alleges that as of July 17, 2008, Summit was aware that the mark TWILIGHT had not been used in connection with "Ongoing television programs", and "providing information relating to ... television programs via a website," and verified the truth of the statement to the trademark office with awareness of its falsity.

43. B.B. Dakota is informed and believes and, on that basis, alleges that as of March 2, 2009, Summit was aware that the mark TWILIGHT had not been used in connection with "Entertainment in the nature of on-going dramatic television programs) and "television programs and literary works," and made the statement, through its designated Attorney, to the trademark office with awareness of its falsity.

44. B.B. Dakota is informed and believes and, on that basis, alleges that as of June 30, 2008 when Summit, through its authorized Attorney, made its verified Declaration in connection with the '175 Application, Summit made a material misrepresentation to the USPTO that the mark TWILIGHT had been used in connection with "Ongoing television programs" and "providing information relating to ... television programs...via a website." The USPTO relied upon this material misrepresentation, and the '175 Application was registered on March 9, 2010 and was assigned U.S. Registration No. 3756560 (the "'560 Registration").

45. B.B. Dakota is informed and believes and, on that basis, alleges that as of July 17, 2008, when Summit, through its Chief Financial Officer, made its verified Declaration in connection with the '175 Application, Summit made a material misrepresentation to the USPTO that the mark TWILIGHT had been used in connection with "Ongoing television program" and "providing information relating to ... television programs... via a website." The USPTO relied upon this material misrepresentation, and the '175 Application was

/ / /

1 registered on March 9, 2010 and was assigned U.S. Registration No. 3756560
2 (the "'560 Registration").

3    46.    B.B. Dakota is informed and believes and, on that basis, alleges
4 that as of March 2, 2009, when Summit, through its authorized Attorney, made
5 its Office Action Response in connection with the '175 Application, Summit
6 made a material misrepresentation to the USPTO that the mark TWILIGHT had
7 been used in connection with all of the following: "Entertainment in the nature
8 of on-going dramatic television programs, production and distribution of motion
9 pictures, providing information relating to motion pictures, television programs
10 and literary works . . . and licensing of merchandise associated with motion
11 pictures; providing online information on the licensing of merchandise
12 associated with motion pictures." The USPTO relied upon this material
13 misrepresentation, and the '175 Application was registered on March 9, 2010
14 and was assigned U.S. Registration No. 3756560 (the "'560 Registration").

15    47.    The '560 Registration was cited as a grounds for Summit's
16 Complaint.

17    48.    By reason of the foregoing, B.B. Dakota will be damaged by the
18 continued registration of the '560 Registration by Summit because registration
19 of the alleged mark in the '560 Registration was obtained fraudulently, and it
20 has been asserted as a ground for Summit's claim of trademark infringement
21 against B.B. Dakota.

22                     **DEMAND FOR JUDGMENT**

23    WHEREFORE, Defendant/Counterclaimant B.B. Dakota, Inc. prays for
24 the following relief:

25    F.    That the Court enter judgment in favor of B.B. Dakota and against
26 Summit on all claim for relief alleged herein;

27    G.    That the Court enter judgment that Summit has willfully violated
28 the provision of 15 U.S.C. §1125(a) by infringing B.B. Dakota's Trade Dress;

H.     That Summit be adjudged to have willfully violated the provisions of 15 U.S.C. § 1125(a) by using a false designation of origin, false description or false representation in connection with its products;

I.     That Summit be adjudged to have unfairly competed with B.B. Dakota under Cal. Bus. & Prof. Code § 17200, *et. seq.* and under the common law of the State of California;

J.     That Summit, its agents, servants, employees, and assigns, and any other persons in active concert or participation with any of them who receive notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

      a.   using the B.B. Dakota's Trade Dress in advertising or promoting Summit's goods, and/or confusingly similar variations of B.B. Dakota's Trade Dress in any manner that is likely to create the impression that Summit's goods originate from B.B. Dakota, are endorsed by B.B. Dakota, or are connected in any way with B.B. Dakota.

      b.   otherwise infringing B.B. Dakota's Trade Dress;

      c.   falsely designating the origin of Summit's goods;

      d.   unfairly competing with B.B. Dakota in any manner whatsoever;

      e.   otherwise causing a likelihood of confusion or injury to B.B. Dakota's business reputation;

K.     that Summit be directed to file with this Court and serve on B.B. Dakota within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction pursuant to 15 U.S.C. § 1116;

L.     That Summit be required to account to B.B. Dakota for any and all profits derived by them and all damages sustained by B.B. Dakota by virtue of Summit's acts complained of herein;

-17-

M.     That Summit be ordered to pay over to B.B. Dakota all damages which B.B. Dakota has sustained as a consequence of the acts complained of herein; subject to proof at trial;

N.     That all claims against B.B. Dakota be dismissed with prejudice and that all relief requested by Summit be denied;

O.     That B.B. Dakota be awarded treble damages pursuant to 15 U.S.C. § 1117;

P.     That B.B. Dakota be awarded exemplary damages from Summit pursuant to Cal. Civ. Code. § 3294;

Q.     That Summit be required to deliver and destroy all devices, literature, advertising, goods and other materials bearing the infringing trade dress;

R.     A judgment that the alleged mark shown in Registration No. '560 was obtained by fraud, and it is therefore invalid and unenforceable.

S.     That Summit's Registration No. '560 be cancelled based on fraud.

T.     A judgment that B.B. Dakota's activities do not infringe Summit's alleged marks and do not constitute unfair competition or deceptive trade practices with respect to Summit's alleged marks.

U.     That this be declared an exceptional case under 15 U.S.C. § 1117 and that B.B. Dakota be awarded its costs and attorneys' fees incurred in connection with this action;

V.     That a judgment be entered, declaring that this action is an exceptional case within the meaning of 35 U.S.C. § 285 and that B.B. Dakota is entitled to recover its reasonable attorneys' fees upon prevailing in this action;

W.     That B.B. Dakota be awarded costs, attorneys fees and other relief, both legal and equitable, to which they may be justly entitled; and

/ / /

/ / /

-18-

X.   That B.B. Dakota be awarded such other and further relief as is just and proper.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: August 6, 2010_____   By: _Lynda J. Zadra-Symes_

Jeffrey L. Van Hoosear
Lynda J. Zadra-Symes
Cheryl T. Burgess
2040 Main Street, 14th Floor
Irvine, CA 92614
Tel: (949) 760-0404
Fax: (949) 760-9502

Attorney for Defendant/Counterclaimant,
B.B. Dakota, Inc.


**JURY DEMAND**

Defendant/Counterclaimant B.B. Dakota, Inc. demands a trial by jury of all issues triable by jury.


KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: August 6, 2010_____   By: _Lynda J. Zadra-Symes_

Jeffrey L. Van Hoosear
Lynda J. Zadra-Symes
Cheryl T. Burgess
2040 Main Street, 14th Floor
Irvine, CA 92614
Tel: (949) 760-0404
Fax: (949) 760-9502

Attorney for Defendant/Counterclaimant,
B.B. Dakota, Inc.

-19-

## **PROOF OF SERVICE**

I am a citizen of the United States of America and I am employed in Irvine, California. I am over the age of 18 and not a party to the within action. My business address is 2040 Main Street, Fourteenth Floor, Irvine, California. On August 6, 2010, I served the within **DEFENDANT B.B. DAKOTA, INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** on the parties or their counsel shown below:

**SERVED VIA ELECTRONIC MAIL AND FIRST CLASS MAIL**

| | |
|---|---|
| Jill M. Pietrini, Esq. (SBN 138335)<br>Paul A. Bost, Esq. (SBN 261531)<br>MANATT, PHELPS & PHILLIPS, LLC<br>11355 West Olympic Blvd.<br>Los Angeles, CA 90064-1614<br>Telephone: (310) 312-4000<br>E-mail: jpietrini@manatt.com<br>pbost@manatt.com<br><br>Attorneys for Plaintiff,<br>Summit Entertainment, LLC | John W. Crittenden, Esq.<br>Kathleen E. Johnston, Esq.<br>COOLEY LLP<br>101 California Street, 5th Floor<br>San Francisco, CA 94111-5800<br>Telephone: (415) 693-2000<br>E-mail: jcrittenden@cooley.com<br>kjohnston@cooley.com<br><br>Attorneys for Defendant,<br>Metropark USA, Inc. |
| Rochelle D. Alpert, Esq.<br>MORGAN, LEWIS & BOCKIUS LLP<br>One Market, Spear Street Tower<br>San Francisco, CA 94105<br>Telephone: (415) 442.1000<br>E-mail: ralpert@morganlewis.com<br><br>Attorneys for Defendant<br>Modcloth, Inc. | Brian M. Hom, Esq.<br>MORGAN, LEWIS & BOCKIUS LLP<br>300 South Grand Avenue<br>Twenty-Second Floor<br>Los Angeles, CA 90071-3132<br>Telephone: (213) 612.2500<br>E-mail: bhom@morganlewis.com<br><br>Attorneys for Defendant<br>Modcloth, Inc. |

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 6, 2010 at Irvine, California.

Peter Toller

9431037_2
080510

-20-