1   MANATT, PHELPS & PHILLIPS, LLP
2   Jill M. Pietrini, Esq. (Bar No. CA 138335)
        jpietrini@manatt.com
3   Barry E. Mallen, Esq. (Bar No. CA 120005)
        bmallen@manatt.com
4   Paul A. Bost, Esq. (Bar No. CA 261531)
        pbost@manatt.com
5   11355 West Olympic Boulevard
    Los Angeles, CA  90064-1614
    Telephone:  (310) 312-4000
6   Facsimile:  (310) 312-4224

7   *Attorneys for Plaintiff and Counterdefendant*
8   SUMMIT ENTERTAINMENT, LLC

9               UNITED STATES DISTRICT COURT
10              CENTRAL DISTRICT OF CALIFORNIA
                    WESTERN DIVISION
11

12  | SUMMIT ENTERTAINMENT, LLC, a Delaware limited liability company, | Case No.  CV-10-4328-GAF (RZx) |
    | --- | --- |

12  SUMMIT ENTERTAINMENT, LLC, a
    Delaware limited liability company,      Case No.  CV-10-4328-GAF (RZx)
13
                Plaintiff,                   **PLAINTIFF SUMMIT ENTERTAINMENT,
14                                           LLC'S AND DEFENDANT B.B. DAKOTA,
          v.                                 INC.'S AGREED UPON JURY
15                                           INSTRUCTIONS**

16  B.B. DAKOTA, INC., a California          Judge:    Hon. Gary A. Feess
    corporation, METROPARK USA, INC., a
17  Delaware corporation, MODCLOTH, INC.,    Complaint Filed:    June 11, 2010
    a Delaware Corporation, and Does 1-20,   Discovery Cut-Off:  September 23, 2011
18  inclusive,                               Pretrial Conf.:     November 14, 2011
                                             Trial Date:         December 13, 2011
19                Defendants.

20  B.B. DAKOTA, INC.,

21                Counterclaimant,

22        v.

23
    SUMMIT ENTERTAINMENT, LLC,
24
                  Counterdefendant.
25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES                                  1

**Agreed Upon Set of Jury Instructions**

**TABLE OF CONTENTS**

| Number | Title | Source | Page Number |
|---|---|---|---|
| 2 | Burden Of Proof – Preponderance Of The Evidence | 9th Cir. 1.3 (2007) | 3 |
| 3 | Burden Of Proof – Clear And Convincing Evidence | 9th Cir. 1.4 (2007) | 4 |
| 4 | What Is Evidence | 9th Cir. 1.6 (2007) | 5 |
| 5 | What Is Not Evidence | 9th Cir. 1.7 (2007) | 6 |
| 6 | Evidence For Limited Purpose | 9th Cir. 1.8 (2007) | 7 |
| 7 | Direct And Circumstantial Evidence | 9th Cir. 1.9 (2007) | 8 |
| 8 | Ruling On Objections | 9th Cir. 1.10 (2007) | 9 |
| 9 | Credibility Of Witnesses | 9th Cir. 1.11 (2007) | 10 |
| 10 | Conduct Of The Jury | 9th Cir. 1.12 (2007) | 11 |
| 11 | No Transcript Available To The Jury | 9th Cir. 1.13 (2007) | 12 |
| 12 | Taking Notes | 9th Cir. 1.14 (2007) | 13 |
| 13 | Bench Conferences And Recesses | 9th Cir. 1.18 (2007) | 14 |
| 14 | Outline Of Trial | 9th Cir. 1.19 (2007) | 15 |
| 15 | Stipulations Of Fact | 9th Cir. 2.2 (2007) | 16 |
| 18 | Impeachment Evidence – Witness | 9th Cir. 2.8 (2007) | 17 |
| 19 | Use Of Interrogatories Of A Party | 9th Cir. 2.10 (2007) | 18 |
| 20 | Use Of Requests For Admission Of A Party | 9th Cir. 2.10 (2007) | 19 |
| 21 | Charts And Summaries Not Received In Evidence | 9th Cir. 2.12 (2007) | 20 |
| 22 | Charts And Summaries In Evidence | 9th Cir.  2.13 (2007) | 21 |
| 23 | Evidence In Electronic Format | 9th Cir. 2.14 (2007) | 22 |
| 24 | Duty To Deliberate | 9th Cir. 3.1 (2007) | 24 |

| Number | Title | Source | Page Number |
|---|---|---|---|
| 25 | Communication With Court | 9th Cir. 3.2 (2007) | 25 |
| 26 | Return Of Verdict | 9th Cir. 3.3 (2007) | 26 |
| 27 | Liability Of Corporations – Scope Of Authority Not In Issue | 9th Cir.  4.2 (2007) | 27 |
| 28 | Preliminary Instruction – Trademark | 9th Cir. 15.0 (2010) | 28 |
| 29 | Definition – Trademark | 9th Cir. 15.1 (2007) | 31 |
| 30 | Definition – Licensee | 9th Cir. 15.14 (2007) | 32 |
| 31 | Trademark Liability – Theories And Policies | 9th Cir. 15.4 (2007) | 33 |
| 33 | Infringement – Elements – Presumed Validity And Ownership – Registered Trademark | 9th Cir. 15.7 (2007) | 34 |
| 34 | Standard Character Word Mark Registration | 37 C.F.R. § 2.52(a) | 37 |
| 35 | Infringement – Elements – Validity – Unregistered Marks | 9th Cir. 15.8 (2010) | 38 |
| 36 | Infringement – Elements – Validity – Unregistered Mark – Distinctiveness | 9th Cir. 15.9 (2010) | 39 |
| 38 | Infringement – Likelihood Of Confusion – Factors – *Sleekcraft* Test | 9th Cir. 15.16 (2010) | 44 |
| 44 | Federal Trademark Dilution – In General | 15 U.S.C. § 1125(c) | 47 |
| 45 | Federal Trademark Dilution – Fame | 15 U.S.C. § 1125(c)(2)(A) | 49 |
| 46 | Factors For Federal Dilution | 15 U.S.C. § 1125(c)(1) | 50 |
| 47 | Unfair Competition | *Kelly Blue Book v. Car-Smarts, Inc.*, 802 F. Supp. 278, 288-89 (C.D. Cal. 1992) | 51 |
| 49 | Trademark Damages – Plaintiff's Actual Damages | 9th Cir. 15.25 (2007) | 52 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

| Number | Title | Source | Page Number |
|---|---|---|---|
| 54 | Preliminary Instruction – Copyright | 9th Cir. 17.0 (2007) | 53 |
| 55 | Copyright – Defined | 9th Cir. 17.1 (2007) | 56 |
| 56 | Copyright – Subject Matter – Generally | 9th Cir. 17.2 (2007) | 57 |
| 57 | Copyright Infringement – Elements – Ownership And Copying | 9th Cir. 17.4 (2007) | 58 |
| 58 | Copyright Infringement – Ownership Of Valid Copyright – Definition | 9th Cir. 17.5 (2007) | 59 |
| 59 | Copyright Interests – Assignee | 9th Cir. 17.10 (2007) | 60 |
| 61 | Copyright Infringement – Copying – License | *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989) | 61 |
| 62 | Copyright – Damages – Willful Infringement | 9th Cir. 17.27 (2007) | 62 |
| 63 | Copyright – Damages | 9th Cir. 17.22 (2007) | 63 |
| 64 | Copyright – Damages – Actual Damages | 9th Cir. 17.23 (2007) | 64 |
| 68 | Elements And Burden Of Proof – Trade Dress (15 U.S.C. § 1125(a)(1)) | 9th Cir. 15.6 (2010) | 65 |

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

1    Pursuant to Section III.D. of the Court's Scheduling and Case Management Order

2    of November 29, 2010 (Docket No. 19), Plaintiff and counter-defendant Summit

3    Entertainment, LLC ("Summit") and defendant and counter-claimant B.B. Dakota, Inc.

4    ("B.B. Dakota") submit the following agreed upon jury instructions.

5

6                                          MANATT, PHELPS & PHILLIPS, LLP

7

8    Dated:      October 31, 2011          By:/s/ Paul A. Bost
                                              Paul A. Bost
9                                             Attorneys for Plaintiff and Counter-
                                              Defendant
10                                            *Summit Entertainment, LLC*

11

12                                         SEDGWICK, LLP

13

14   Dated:      October 31, 2011          By:/s/ Heather McCloskey
                                              Heather McCloskey
15                                            Attorneys for Defendant and
                                              Counterclaimant
16                                            *B.B. Dakota, Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

COURT INSTRUCTION NO. 2

**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**<u>Authority</u>**

Ninth Circuit Model Civil Jury Instructions *1.3 (2007)*.

COURT INSTRUCTION NO. 3

## BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

**Authority**

Ninth Circuit Model Civil Jury Instructions *1.4 (2007).*

COURT INSTRUCTION NO. 4

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.     The sworn testimony of any witness;

2.     The exhibits which are received into evidence; and

3.     Any facts to which the lawyers have agreed.

**Authority**

Ninth Circuit Model Civil Jury Instructions *1.6 (2007)*.

COURT INSTRUCTION NO. 5

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.      Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

4.      Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

**<u>Authority</u>**

Ninth Circuit Model Civil Jury Instructions *1.7 (2007)*.

COURT INSTRUCTION NO. 6

**EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

**Authority**

Ninth Circuit Model Civil Jury Instructions *1.8 (2007)*.

COURT INSTRUCTION NO. 7

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**Authority**

Ninth Circuit Model Civil Jury Instructions *1.9 (2007)*.

COURT INSTRUCTION NO. 8

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**<u>Authority</u>**

Ninth Circuit Model Civil Jury Instructions *1.10 (2007)*.

COURT INSTRUCTION NO. 9

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

1.    The opportunity and ability of the witness to see or hear or know the things testified to;

2.    The witness's memory;

3.    The witness's manner while testifying;

4.    The witness's interest in the outcome of the case and any bias or prejudice;

5.    Whether other evidence contradicted the witness's testimony;

6.    The reasonableness of the witness's testimony in light of all the evidence; and

7.    Any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**Authority**

Ninth Circuit Model Civil Jury Instructions *1.11 (2007)*.

COURT INSTRUCTION NO. 10

## CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet "blogs," internet bulletin boards or e-mails.  Nor are you allowed to permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or online reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the clerk to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

**<u>Authority</u>**

Ninth Circuit Model Civil Jury Instructions *1.12 (2007)*.

1

COURT INSTRUCTION NO. 11

2

3

**NO TRANSCRIPT AVAILABLE TO JURY**

4

During deliberations, you will have to make your decision based on what you

5

recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close

6

attention to the testimony as it is given.

7

If at any time you cannot hear or see the testimony, evidence, questions or

8

arguments, let me know so that I can correct the problem.

9

10

**<u>Authority</u>**

11

Ninth Circuit Model Civil Jury Instructions *1.13 (2007)*.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    COURT INSTRUCTION NO. 12

2

3                          **TAKING NOTES**

4         If you wish, you may take notes to help you remember the evidence.  If you do

5    take notes, please keep them to yourself until you and your fellow jurors go to the jury

6    room to decide the case.  Do not let note-taking distract you.  When you leave, your

7    notes should be left in the courtroom.  No one will read your notes.  They will be

8    destroyed at the conclusion of the case.

9         Whether or not you take notes, you should rely on your own memory of the

10   evidence.  Notes are only to assist your memory.  You should not be overly influenced

11   by your notes or those of your fellow jurors.

12

13   **Authority**

14   Ninth Circuit Model Civil Jury Instructions *1.14 (2007)*.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT INSTRUCTION NO. 13

## BENCH CONFERENCES AND RECESSES

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess. Please understand that while you [are] [were] waiting, we [are] [were] working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum. I [may] [did] not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

### Authority

Ninth Circuit Model Civil Jury Instructions *1.18 (2007)*.

COURT INSTRUCTION NO. 14

**OUTLINE OF TRIAL**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**<u>Authority</u>**

Ninth Circuit Model Civil Jury Instructions *1.19 (2007)*.

COURT INSTRUCTION NO. 15:

## STIPULATIONS OF FACT

The parties have agreed to certain facts that will be read to you.  You should therefore treat these facts as having been proved.

**Authority**

Ninth Circuit Model Civil Jury Instructions No. 2.2 (2007) (modified to identify subject matter of stipulation).

COURT INSTRUCTION NO. 18:

## IMPEACHMENT EVIDENCE - WITNESS

The evidence that a witness e.g., has been convicted of a crime, lied under oath on a prior occasion, etc. may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose

**Authority**

Ninth Circuit Model Civil Jury Instructions No. 2.8 (2007)

COURT INSTRUCTION NO. 19

## USE OF INTERROGATORIES OF A PARTY

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**Authority**

Ninth Circuit Model Civil Jury Instructions *2.10 (2007)*.

1  COURT INSTRUCTION NO. 20

2

3                    **USE OF REQUESTS FOR ADMISSION OF A PARTY**

4          Evidence was presented to you in the form of admissions or denials of one of the

5  parties to written requests for admission submitted by the other side.  These admissions

6  or denials were given in writing and under oath, before the actual trial, in response to

7  requests for admission that were submitted in writing under established court

8  procedures.  You should consider the admissions or denials, insofar as possible, in the

9  same way as if they were made from the witness stand.

10

11  **Authority**

12  Adapted from Ninth Circuit Model Civil Jury Instructions *2.10 (2007).*

13  FRCP 36

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT INSTRUCTION NO. 21

**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**Authority**

Adapted from Ninth Circuit Model Civil Jury Instructions *2.12 (2007)*.

COURT INSTRUCTION NO. 22

**CHARTS AND SUMMARIES IN EVIDENCE**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

**<u>Authority</u>**

Ninth Circuit Model Civil Jury Instructions *2.13 (2007)*

COURT INSTRUCTION NO. 23

**EVIDENCE IN ELECTRONIC FORMAT**

Those exhibits capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. (Alternatively, you may request a paper copy of an exhibit received in evidence by sending a note through the clerk.) If you need additional equipment or supplies, you may make a request by sending a note.

In the event of any technical problem, or if you have questions about how to operate the computer or other equipment, you may send a note to the clerk, signed by your foreperson or by one or more members of the jury. Be as brief as possible in describing the problem and do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the clerk present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any non-juror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any non-juror other than to describe the technical problem or to seek information about operation of equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to make sure that the

computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform me immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Authority**

Ninth Circuit Model Civil Jury Instructions *2.14 (2007)*

1    COURT INSTRUCTION NO. 24

2

3                              **DUTY TO DELIBERATE**

4

5        When you begin your deliberations, you should elect one member of the jury as

6 your presiding juror.  That person will preside over the deliberations and speak for you

7 here in court.

8        You will then discuss the case with your fellow jurors to reach agreement if you

9 can do so.  Your verdict must be unanimous.

10        Each of you must decide the case for yourself, but you should do so only after you

11 have considered all of the evidence, discussed it fully with the other jurors, and listened

12 to the views of your fellow jurors.

13        Do not hesitate to change your opinion if the discussion persuades you that you

14 should.  Do not come to a decision simply because other jurors think it is right.

15        It is important that you attempt to reach a unanimous verdict but, of course, only if

16 each of you can do so after having made your own conscientious decision.  Do not

17 change an honest belief about the weight and effect of the evidence simply to reach a

18 verdict.

19

20    **Authority**

21 Ninth Circuit Model Civil Jury Instructions *3.1 (2007)*

22

23

24

25

26

27

28

COURT INSTRUCTION NO. 25

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

**Authority**

Ninth Circuit Model Civil Jury Instructions *3.2 (2007)*

1    COURT INSTRUCTION NO. 26

2

3                              **RETURN OF VERDICT**

4

5         A verdict form has been prepared for you.  After you have reached unanimous

6    agreement on a verdict, your presiding juror will fill in the form that has been given to

7    you, sign and date it, and advise the court that you are ready to return to the courtroom.

8

9    **Authority**

10   Ninth Circuit Model Civil Jury Instructions *3.3 (2007)*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT INSTRUCTION NO. 27

**LIABILITY OF CORPORATIONS – SCOPE OF AUTHORITY NOT IN ISSUE**

Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

**Authority**

Ninth Circuit Model Civil Jury Instructions *4.2 (2007)*

COURT INSTRUCTION NO. 28

### PRELIMINARY INSTRUCTION—TRADEMARK

The plaintiff in this case, Summit Entertainment, LLC, seeks damages against the defendant B.B. Dakota, Inc for trademark infringement, trademark dilution, and unfair competition.  Defendant denies infringing Plaintiff's trademarks and unfairly competing and contends the trademarks are invalid.  To help you understand the evidence that will be presented in this case, I will explain some of the legal terms [related to Plaintiff's trademark claims that] you will hear during this trial.

### DEFINITION OF A TRADEMARK

A trademark is a word, a name, a symbol, a device, or a combination of them, that indicates the source of goods.  The owner, assignee, or licensee of a trademark has the right to exclude others from using that trademark.

### HOW A TRADEMARK IS OBTAINED

A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace, or by using it before the alleged infringer [uses it].  Rights in a trademark are obtained only through commercial use of the mark.

### TRADEMARK INTERESTS

The owner of a trademark may enter into an agreement that permits another person to use the trademark.  This type of agreement is called a license, and the person permitted to use the trademark is called a licensee.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

A trademark owner may enforce the right to exclude others in an action for infringement.

**TRADEMARK REGISTRATION**

Once the owner of a trademark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office.  Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark in connection with the type of goods [or services] specified in the certificate.

**THE PLAINTIFF'S BURDEN OF PROOF**

In this case, Plaintiff contends that Defendant has infringed Plaintiff's trademarks in the names TWILIGHT and BELLA.  Plaintiff has the burden of proving by a preponderance of the evidence that Plaintiff is the owner of valid trademarks and that Defendant infringed those trademarks.  Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that Defendant infringed Plaintiff's trademarks.

**THE DEFENDANT'S BURDEN OF PROOF**

Defendant contends that its use of Plaintiff's TWILIGHT and BELLA trademarks did not constitute an infringement as it claims it had the permission to do so, or that its use of Plaintiff' TWILIGHT and BELLA trademark constitutes "fair use."  Defendant has the burden of proving by a preponderance of the evidence that Defendant obtained Plaintiff's consent to use those trademarks or that the use of Plaintiff's trademarks constitutes fair use.

1

2      **<u>Authority</u>**

3      Ninth Circuit Model Civil Jury Instructions 15.0 (2010) (modified to add applicable

4      defenses of Defendant.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT INSTRUCTION NO. 29

## DEFINITION—TRADEMARK

A trademark is any word, name, symbol, device, or any combination thereof, used by a person to identify and distinguish that person's goods or services from those of others and to indicate the source of the goods or services, even if that source is generally unknown.

A person who uses the trademark of another may be liable for damages.

**Authority**

Ninth Circuit Model Civil Jury Instructions 15.1 (2007)

15 U.S.C. § 1127

COURT INSTRUCTION NO. 30

**DEFINITION—LICENSEE**

The owner of a trademark may enter into an agreement that permits another person to use the trademark.  This type of agreement is called a license, and the person permitted to use the trademark is called a licensee.

**Authority**

Ninth Circuit Model Civil Jury Instructions 15.14 (2007) (modified to delete second paragraph regarding licensee's right to exclude)

COURT INSTRUCTION NO. 31

### TRADEMARK LIABILITY—THEORIES AND POLICIES

The trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict.  Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In my instructions, I will identify types of facts you are to consider in deciding if Defendant is liable to Plaintiff for violating the trademark law. These facts are relevant to whether Defendant is liable for:

1.　　Infringing Plaintiff's registered or unregistered trademark rights, by using a trademark in a manner likely to cause confusion among consumers; or

2.　　Unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality or association, affiliation, approval or sponsorship of Plaintiff's goods.

**Authority**

Ninth Circuit Model Civil Jury Instructions 15.4 (2007) (modified to include unregistered trademarks and false designation of origin claim)

15 U.S.C. §§ 1114(1), 1125(a)

COURT INSTRUCTION NO. 33

**INFRINGEMENT—ELEMENTS—PRESUMED VALIDITY AND OWNERSHIP—**

**REGISTERED TRADEMARK**

I gave you Instruction No. 34 that requires Plaintiff to prove by a preponderance of the evidence that the TWILIGHT and BELLA trademarks at issue in this case are valid and protectable and that Plaintiff owns the trademarks.  A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods and distinguishes those goods from the goods of others.  A trademark becomes protectable after it is used in commerce.

One way for Plaintiff to prove trademark validity is to show that the trademarks are registered.  An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Exhibit __ are certificates of registration from the United States Patent and Trademark Office.  They were submitted by Plaintiff as proof of the validity of the trademarks and that Plaintiff owns the trademarks.

The facts recited in these certificates are:

TWILIGHT is registered with the U.S. Patent & Trademark Office for use with: production and distribution of motion pictures, providing information relating to motion pictures and literary works, and licensing of merchandise associated with motion pictures; providing online information on the licensing of merchandise associated with motion pictures;

TWILIGHT TRACKER is registered with the U.S. Patent & Trademark Office for use with:  downloadable software that provides access to movie content and to photographs, news and information regarding movies, movie tickets, showtimes and

1   merchandise, and allows users to select avatars and interact with other users, to

2   integrate with online social networks, and to communicate with others via a message

3   board;

4    TWILIGHT (Stylized) is registered with the U.S. Patent & Trademark Office for

5   use:  licensing of merchandise associated with motion pictures; providing online

6   information on the licensing of merchandise associated with motion pictures;

7    TWILIGHT is registered with the U.S. Patent & Trademark Office for use with:

8   adhesive bandages;

9    TWILIGHT is registered with the U.S. Patent & Trademark Office for use with:

10  belt buckles not made of precious metal; ornamental cloth patches; embroidered patches

11  for clothing; and ornamental novelty buttons;

12   TWILIGHT is registered with the U.S. Patent & Trademark Office for use with:  all

13  purpose carrying bags, back packs, beach bags, wallets, purses, business card cases,

14  pet clothing, luggage, and messenger bags;

15   TWILIGHT is registered with the U.S. Patent & Trademark Office for use with:

16  pre-recorded DVDs and other audiovisual recordings featuring motion pictures and

17  documentaries; motion picture films in the fields of drama and romance; and

18  mousepads;

19   LUNA TWILIGHT is registered with the U.S. Patent & Trademark Office for use

20  with:  cosmetics;

21   TWILIGHT is registered with the U.S. Patent & Trademark Office for use with:

22  clothing, namely, t-shirts, loungewear, socks, pants, sweatshirts, sweatpants, bandanas,

23  scarves, aprons, jackets, tank tops, vests, neckties, jerseys, shirts, sweaters, babydoll t-

24  shirts, infantwear, track pants, and hooded shirts; headwear; belts; and wrist cuffs;

25   THE TWILIGHT SAGA is registered with the U.S. Patent & Trademark Office for

26  use with t:  licensing of merchandise and intellectual property associated with motion

27  pictures; providing online information on the licensing of merchandise associated with

28  motion pictures; and providing a selection of online electronic greeting cards;

THE TWILIGHT SAGA is registered with the U.S. Patent & Trademark Office for use with:  bandages for skin wounds;

THE TWILIGHT SAGA is registered with the U.S. Patent & Trademark Office for use with:  candy and chewing gum; and

BELLA'S CHARM BRACELET is registered with the U.S. Patent & Trademark Office for use with:  bracelets and bracelets of precious metal.

Unless Defendant submits evidence rebutting the facts in the certificates, you must consider the trademarks conclusively proved as valid and owned by Plaintiff.

**Authority**

Ninth Circuit Model Civil Jury Instructions 15.7 (2007)

15 U.S.C. §§ 1057, 1065, 1115

1   COURT INSTRUCTION NO. 34

2

3   **STANDARD CHARACTER WORD MARK REGISTRATION**

4

5          Plaintiff owns federal registrations of the TWILIGHT trademark in standard

6   characters.  When a registrant, such as Plaintiff, registers a trademark in standard

7   characters, it does not make a claim to use of the trademark with any particular font

8   style, size, or color.  Instead, a standard character registration is broad and covers all

9   design variations of the word mark, and is not limited to the mark depicted in any

10  particular font style, size, color, form, lettering, or any unique stylization.  Therefore,

11  Plaintiff's registration of TWILIGHT in standard character format covers Plaintiff's use of

12  TWILIGHT (Stylized) such that there is a presumption of validity of Plaintiff's TWILIGHT

13  (Stylized) trademark.

14

15  <u>**Authority**</u>

16  37 C.F.R. § 2.52(a)

17  *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 970 (10th Cir. 2002) (A

18  registration standard characters covers all design features and "is not limited to any

19  special form or lettering.")

20  *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 949-50 (Fed. Cir. 2000) (respondent

21  cannot argue that his mark, registered in a standard character format, is dissimilar from

22  petitioner's because respondent uses a unique stylization on his mark and an

23  accompanying house mark; the mark at issue is the mark as registered, not as used.)

24  *Msi Data Corporation v. Microprocessor Systems, Inc.*, 220 U.S.P.Q. 655, 657 (TTAB

25  1983) ("[O]pposer's initial and earliest registration is in typed drawing form and thus

26  opposer is not limited as to the form or style in which it may carry the mark on products

27  and could well present its mark in a variety of styles, including one similar to applicant's

28  mark here.")

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

37

COURT INSTRUCTION NO. 35

### INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARKS

As set forth in Instruction No. 35, Plaintiff owns registrations of the TWILIGHT word mark, the TWILIGHT stylized mark, and other trademarks including TWILIGHT for certain goods and services.  However, Plaintiff's BELLA trademark, [as used for certain goods and services, such as clothing and other merchandise], is not registered.  Unregistered trademarks can be valid and provide the trademark owner with the exclusive right to use that mark.  Instruction No. 34 requires Plaintiff to prove by a preponderance of the evidence that the BELLA trademark is valid.  A valid trademark is a word, symbol, or device that is either:

1.      Inherently distinctive; or

2.      Descriptive, but has acquired a secondary meaning.

Only a valid trademark can be infringed.  Only if you determine Plaintiff proved by a preponderance of the evidence that the BELLA trademark is a valid trademark should you consider whether Plaintiff owns it or whether Defendant's actions infringed it.

Only if you determine that the BELLA trademark is not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning, as I will direct in Instruction No. 39.

**Authority**

Ninth Circuit Model Civil Jury Instructions 15.8 (2010)

COURT INSTRUCTION NO. 36

**INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARK—
DISTINCTIVENESS**

**STRENGTH AS A LIKELIHOOD OF CONFUSION FACTOR**

How strongly a trademark indicates that a good comes from a particular source, even if unknown, is an important factor to consider in assessing its validity and for determining whether the trademark used by Defendant creates for consumers a likelihood of confusion with Plaintiff's trademarks.

Plaintiff asserts the BELLA mark is a valid and protectable trademark for clothing and other merchandise.  Plaintiff contends that Defendant's use of that trademark in connection with Defendant's jackets infringes Plaintiff's trademark and is likely to cause confusion about the origin, sponsorship, or approval of those goods.

In order to determine if Plaintiff has met its burden of showing that the BELLA mark is a valid trademark, you should classify them on the spectrum of trademark distinctiveness that I will explain in this instruction.

An inherently distinctive trademark is a word, symbol or device, or combination of them, which intrinsically identifies a particular source of a good in the market.  The law assumes that an inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product, and that consumers will be predisposed to equate the trademark with the source of a product.

**SPECTRUM OF MARKS**

Trademark law provides great protection to distinctive or strong trademarks. Conversely, trademarks that are not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses.  Trademarks that are not

1  distinctive are not entitled to any trademark protection.  For deciding trademark

2  protectability, you must consider whether a trademark is inherently distinctive.

3  Trademarks are grouped into four categories according to their relative strength or

4  distinctiveness.  These four categories are, in order of strength or distinctiveness:

5  arbitrary (which is inherently distinctive), suggestive (which also is inherently distinctive),

6  descriptive (which is protected only if it acquires in consumers' minds a "secondary

7  meaning" which I explain in Instruction 39, and generic names (which are entitled to no

8  protection).

9      **Arbitrary Trademarks.**  The first category is "inherently distinctive" trademarks.

10  They are considered strong marks and are clearly protectable.  They involve the

11  arbitrary, fanciful or fictitious use of a word to designate the source of a product.  Such a

12  trademark is a word that in no way describes or has any relevance to the particular

13  product or service it is meant to identify.  It may be a common word used in an unfamiliar

14  way.  It may be a newly created (coined) word or parts of common words which are

15  applied in a fanciful, fictitious or unfamiliar way, solely as a trademark.

16      For instance, the common word "apple" became a strong and inherently

17  distinctive trademark when used by a company to identify the personal computers that

18  company sold.  The company's use of the word "apple" was arbitrary or fanciful because

19  "apple" did not describe and was not related to what the computer was, its components,

20  ingredients, quality, or characteristics.  "Apple" was being used in an arbitrary way to

21  designate for consumers that the computer comes from a particular manufacturer or

22  source.

23      **Suggestive Trademarks.** The next category is suggestive trademarks. These

24  trademarks are also inherently distinctive but are considered weaker than arbitrary

25  trademarks.  Unlike arbitrary trademarks, which are in no way related to what the product

26  or service is or its components, quality, or characteristics, suggestive trademarks imply

27  some characteristic or quality of the product or service to which they are attached.  If the

28  consumer must use imagination or any type of multi-stage reasoning to understand the

1  trademark's significance, then the trademark does not describe the product's features,

2  but suggests them.

3         A suggestive use of a word involves consumers associating the qualities the word

4  suggests to the product or service to which the word is attached.  For example, when

5  "apple" is used not to indicate a certain company's computers, but rather "Apple–A–Day"

6  Vitamins, it is being used as a suggestive trademark.  "Apple" does not describe what

7  the vitamins are.  However, consumers may come to associate the healthfulness of "an

8  apple a day keeping the doctor away" with the supposed benefits of taking "Apple–A–

9  Day" Vitamins.

10        **Descriptive Trademarks.** The third category is descriptive trademarks.  These

11  trademarks directly identify or describe some aspect, characteristic, or quality of the

12  product or service to which they are affixed in a straightforward way that requires no

13  exercise of imagination to be understood.

14        For instance, the word "apple" is descriptive when used in the trademark

15  "CranApple" to designate a cranberry-apple juice.  It directly describes ingredients of the

16  juice.  Other common types of descriptive trademarks identify where a product or service

17  comes from, or the name of the person who makes or sells the product or service.  Thus,

18  the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is

19  a descriptive trademark because it geographically describes where the cider comes

20  from.  Similarly, a descriptive trademark can be the personal name of the person who

21  makes or sells the product.  So, if a farmer in Apple Valley, Judy Brown, sold her cider

22  under the label "Judy's Juice" (rather than CranApple) she is making a descriptive use of

23  her personal name to indicate and describe who produced the apple cider, and she is

24  using her first name as a descriptive trademark.

25        **Generic Names.** The fourth category is entitled to no protection at all.  They are

26  called generic names and they refer to a general name of the product or service, as

27  opposed to the plaintiff's brand for that product or service.  Generic names are part of

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41

1   our common language that we need to identify all such similar products or services.  A

2   generic name is a name for the product or service on which it appears.

3      If the primary significance of the alleged mark is to name the type of product or

4   service rather than the manufacturer or provider, the term is a generic name and cannot

5   be a valid trademark.  If the majority of consumers would understand the term to name

6   the type of product or service rather than the manufacturer or provider, the primary

7   significance of the term is generic and not entitled to protection as a trademark.

8      Clearly, the word apple can be used as a generic name and not be entitled to any

9   trademark protection.  This occurs when the word is used to identify the fruit from any

10  apple tree.

11     The computer maker who uses the word "apple" as a trademark to identify its

12  personal computer, or the vitamin maker who uses that word as a trademark on

13  vitamins, has no claim for trademark infringement against the grocer who used that

14  same word to indicate the fruit sold in a store.  As used by the grocer, the word is

15  generic and does not indicate any particular source of the product. As applied to the fruit,

16  "apple" is simply a commonly used name for what is being sold.

17

18                    **MARK DISTINCTIVENESS AND VALIDITY**

19

20     If you decide that the BELLA mark is arbitrary or suggestive, it is considered to be

21  inherently distinct.  An inherently distinctive trademark is valid and protectable.

22  On the other hand, if you determine that the BELLA mark is generic, it cannot be

23  distinctive and therefore is not valid nor protectable.  You must render a verdict for

24  Defendant on the charge of infringement of the BELLA trademark in Instruction No. 34.

25     If you decide that the BELLA mark is descriptive, you will not know if the

26  trademark is valid or invalid until you consider if it has gained distinctiveness by the

27  acquisition of secondary meaning, which I explain in Instruction No. 39.

28

1

**<u>Authority</u>**

2

Ninth Circuit Model Civil Jury Instructions 15.9 (2010)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT INSTRUCTION NO. 38

**INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTORS—*SLEEKCRAFT* TEST**

You must consider whether Defendant's use of the trademarks is likely to cause confusion about the source of Plaintiff's or Defendant's goods or create confusion as to whether Plaintiff approved, sponsored, or endorsed Defendant's products that featured the TWILIGHT and/or BELLA trademark.

I will suggest some factors you should consider in deciding this.  The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this.  As you consider the likelihood of confusion you should examine the following:

1.      Strength or Weakness of the Plaintiff's Trademarks.  The more the consuming public recognizes Plaintiff's trademarks as an indication of origin of Plaintiff's goods, the more likely it is that consumers would be confused about the source of Defendant's goods or Plaintiff's affiliation or association with or approval or sponsorship of Defendant's goods.

2.      Defendant's Use of the Trademarks.  If Defendant and Plaintiff use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

3.      Similarity of Plaintiff's and Defendant's Trademarks.  If the trademarks used by Plaintiff and Defendant in the marketplace are similar in appearance, sound, or meaning, there is a greater chance that consumers are likely to be confused by Defendant's use of the trademarks.  Here, Plaintiff contends that Defendant's used Plaintiff's identical TWILIGHT, TWILIGHT stylized, and BELLA trademarks.

4.      Actual Confusion.  If use by Defendant of Plaintiff's trademarks has led to instances of actual confusion, this strongly suggests a likelihood of confusion.  However

1   actual confusion is not required for a finding of likelihood of confusion.  Even if actual

2   confusion did not occur, Defendant's use of the trademarks may still be likely to cause

3   confusion.  As you consider whether the trademarks used by Defendant create for

4   consumers a likelihood of confusion with Plaintiff's trademarks, you should weigh any

5   instances of actual confusion against the opportunities for such confusion.  If the

6   instances of actual confusion have been relatively frequent, you may find that there has

7   been substantial actual confusion.  If, by contrast, there is a very large volume of sales,

8   but only a few isolated instances of actual confusion you may find that there has not

9   been substantial actual confusion.

10   5.      Defendant's Intent.  Knowing use by Defendant of Plaintiff's trademarks to identify

11   similar goods may strongly show an intent to derive benefit from the reputation of

12   Plaintiff's trademarks, suggesting an intent to cause a likelihood of confusion.  On the

13   other hand, even in the absence of proof that Defendant acted knowingly, the use of

14   Plaintiff's trademarks to identify similar goods may indicate a likelihood of confusion.

15   6.      Marketing/Advertising Channels.  If Plaintiff's and Defendant's goods and services

16   are likely to be sold in the same or similar stores or outlets, or advertised in similar

17   media, this may increase the likelihood of confusion.

18   7.      Consumer's Degree of Care.  The more sophisticated the potential buyers of the

19   goods or the more costly the goods, the more careful and discriminating the reasonably

20   prudent purchaser exercising ordinary caution may be.  They may be less likely to be

21   confused by similarities in Plaintiff's and Defendant's trademarks.  The less sophisticated

22   the potential buyers or the less expensive the goods, the less care potential purchasers

23   may exercise.  They may be more likely to be confused by similarities between Plaintiff's

24   and Defendant's trademarks.

25   8.      Product Line Expansion.  When the parties' products differ, you may consider how

26   likely Plaintiff is to begin selling the products for which Defendant is using Plaintiff's

27   trademarks.  If there is a strong possibility of expanding into the other party's market,

28   there is a greater likelihood of confusion.

1    9.      <u>Other Factors</u>.  Any other factors that bear on likelihood of confusion.

2

3    **<u>Authority</u>**

4    Ninth Circuit Model Civil Jury Instructions 15.16 (2010)

5    *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.1979)

6    *Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993)

7    ("Because each factor [of eight-factor Sleekcraft test] is not necessarily relevant to every

8    case, this list functions as a guide and is 'neither exhaustive nor exclusive.'" (citations

9    omitted))

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT INSTRUCTION NO. 44

**FEDERAL TRADEMARK DILUTION – IN GENERAL**

In addition to trademark infringement, Plaintiff has also asserted a claim for trademark dilution.  If the owner of a famous trademark establishes that another party began using a trademark after the owner's trademark became famous, it can prevent the use by that party of that trademark, regardless of whether there is a likelihood of confusion, whether there is competition between the parties and their respective products, or whether there is actual economic injury to the plaintiff.  Dilution is the lessening of the capacity of a famous trademark to identify and distinguish products. Distinctiveness refers to the ability of the famous trademark to uniquely identify a single source and thus maintain its selling power.  A trademark is famous when it is widely recognized by the general consuming public of the United States as a designation of source of the products of the trademark's owner.

In order to prevail on its dilution claim under federal law, Plaintiff must prove the following things by a preponderance of the evidence:

1.	Plaintiff owns the TWILIGHT trademark, which is famous and distinctive;

2.	Defendant is making commercial use of the TWILIGHT trademark;

3.	Defendant's use began after the TWILIGHT trademark became famous; and

4.	Defendant's of the TWILIGHT trademark is likely to cause dilution by blurring the capacity of Plaintiff's trademarks to identify and distinguish its goods, or by tarnishing Plaintiff's trademarks.

**Authority**

15 U.S.C. § 1125(c).

*Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008) (Test for dilution.)

1

2      *Thane international, Inc. v. Trek Bicycle Corporation*, 305 F.3d 894, 904 (9th Cir. 2002)

3      (first paragraph.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT INSTRUCTION NO. 45

**FEDERAL TRADEMARK DILUTION – FAME**

As set forth in Instruction No. 46, Plaintiff must establish that it owns the TWILIGHT trademark, and that the TWILIGHT trademark is famous.  The TWILIGHT trademark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether the TWILIGHT mark possesses the requisite degree of recognition, you may consider all relevant factors, including the following:

(1)     The duration, extent, and geographic reach of advertising and publicity of the TWILIGHT mark, whether advertised or publicized by the owner or third parties.

(2)     The amount, volume, and geographic extent of sales of goods or services offered under the TWILIGHT mark.

(3)     The extent of actual recognition of the TWILIGHT mark.

(4)     Whether the TWILIGHT mark is the subject of a federal trademark registration.

**Authority**

15 U.S.C. § 1125(C)(2)(A)

COURT INSTRUCTION NO. 46

**FACTORS FOR FEDERAL DILUTION**

To determine whether Defendant's use of the TWILIGHT trademark is likely to dilute Plaintiff's TWILIGHT trademark, you should consider at least the following six factors:

1.      The degree of similarity between Defendant's TWILIGHT mark and Plaintiff's TWILIGHT mark;

2.      The degree of inherent or acquired distinctiveness of the TWILIGHT mark;

3.      The extent to which Plaintiff is engaging in substantially exclusive use of the TWILIGHT mark;

4.      The degree of recognition of the TWILIGHT trademark;

5.      Whether Defendant intended to create an association with the TWILIGHT mark;

6.      Any actual association between B.B. Dakota's use of the TWILIGHT mark and Plaintiff' TWILIGHT mark.

Not every factor is relevant in every case, and you may find a likelihood of dilution even if not all factors are relevant to this case.

**Authority**

15 U.S.C. § 1125(c)(1).

*See Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1013 (9th Cir. 2004) ("The FTDA lists eight non-exclusive factors for a court to consider in determining whether a mark is distinctive and famous.")

COURT INSTRUCTION NO. 47

## UNFAIR COMPETITION

Plaintiff has also alleged claims for common law and statutory unfair competition. Although unfair competition is broader than trademark infringement, if you find for the Plaintiff on its trademark infringement or false designation of origin claims, you should find for Plaintiff on its unfair competition claims. Just like you saw was the case for a claim for trademark infringement, the primary consideration in trademark-related unfair competition cases in California is the likelihood of confusion.

**Authority**

*Stork Restaurant v. Sahati*, 166 F.2d 348, 354 (9th Cir. 1948) (The reach of the law of unfair competition is greater than that of the law of trademarks.)

*Kelly Blue Book v. Car-Smarts, Inc.*, 802 F. Supp. 278, 288-89 (C.D. Cal. 1992) (The federal Lanham Act and California law of unfair competition are substantially congruent, and in this District, the primary consideration in trademark-related unfair competition cases in California, as elsewhere, is the likelihood of confusion.)

*Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 728 F. Supp. 1442, 1452 (C.D. Cal. 1989), *aff'd in part, rev'd in part*, 944 F.2d 1446, 1457 (9th Cir. 1991) ("An action for unfair competition under Cal. Bus. & Prof. Code § 17200 is substantially congruent to a trademark infringement claim under the Lanham Act. Under both, the 'ultimate test' is whether the public is likely to be deceived or confused by the similarity of the marks.")

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

**COURT INSTRUCTION NO. 49**

**TRADEMARK DAMAGES—PLAINTIFF'S ACTUAL DAMAGES**

If you find for Plaintiff on Plaintiff's trademark, false designation of origin, or unfair competition claims or if you find that Defendant willfully engaged in trademark dilution, you must determine the Plaintiff's actual damages.

Plaintiff has the burden of proving actual damages by a preponderance of the evidence.  Damages means the amount of money which will reasonably and fairly compensate Plaintiff for any injury you find was caused by Defendant's infringement of Plaintiff's trademarks.

You should consider the following:

1.      The injury to the Plaintiff's goodwill, including injury to the Plaintiff's general business reputation.

2.      The license fees that the Plaintiff would have earned but for the Defendant's infringement.

3.      The lost profits that Plaintiff would have earned but for Defendant's infringement.

4.      Any other factors that bear on Plaintiff's actual damages.

**Authority**

*Ninth Circuit Model Civil Jury Instructions* 15.25 (2007).

15 U.S.C. §§ 1117, 1125(C).

Neva, Inc. v. Christian Duplications International, Inc., 743 F. Supp. 1533, 1552 (M.D. Fla. 1990) ("A reasonable royalty is one method to value any damages sustained by a plaintiff in Lanham Act claim.")

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COURT INSTRUCTION NO. 54

## PRELIMINARY INSTRUCTION—COPYRIGHT

Plaintiff has also stated a claim for copyright infringement based on Defendant's use of a photograph of the Bella character created in connection with the advertisement and promotion of Plaintiff's *Twilight* motion pictures, which is known as and referred to in this case as the "Bella Image."  Plaintiff seeks damages against Defendant for copyright infringement.  Defendant denies infringing the copyright of Plaintiff and assert it made a fair use of the work.  To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

## DEFINITION OF COPYRIGHT

The owner of a copyright has the exclusive right to exclude any other person from reproducing, preparing derivative works, distributing, performing, displaying, or using the work covered by copyright for a specific period of time.

Copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, mask works fixed in semiconductor chip products, or a computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles or discoveries cannot themselves be copyrighted.

The copyrighted work must be original.  An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

**COPYRIGHT INTERESTS**

The copyright owner may transfer, sell or convey to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from reproducing, preparing a derivative work from, distributing, performing, or displaying, the copyrighted work. To be valid, the transfer, sale, or conveyance must be in writing.  The person to whom a right is transferred is called an assignee.

One who owns a copyright may agree to let another reproduce, prepare a derivative work of, distribute, perform, or display the copyrighted work.  To be valid, the transfer, sale, or conveyance must be in writing.

**HOW COPYRIGHT IS OBTAINED**

Copyright automatically exists in a work the moment it is fixed in any tangible medium of expression.  The owner of the copyright may register the copyright by delivering to the Copyright Office of the Library of Congress a copy of the copyrighted work.  After examination and a determination that the material deposited constitutes copyrightable subject matter and that legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

**PLAINTIFF'S BURDEN OF PROOF**

In this case, Plaintiff contends that Defendant has infringed Plaintiff's copyright in a photograph created in connection with the promotion of Plaintiff's *Twilight* motion pictures.  Plaintiff has the burden of proving by a preponderance of the evidence that Plaintiff is the owner of the copyright and that Defendant copied original elements of the copyrighted work.  Preponderance of the evidence means that you must be persuaded

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

by the evidence that it is more probably true than not true that the copyrighted work was infringed.

## PROOF OF COPYING

To prove that the Defendant copied Plaintiff's work, Plaintiff may show that Defendant had access to Plaintiff's copyrighted work and that there are substantial similarities between Defendant's work and Plaintiff's copyrighted work.  Here, Defendant admits that it copied Plaintiff's work.

## LIABILITY FOR INFRINGEMENT

One who reproduces, prepares derivative works from, distributes, performs, or displays a copyrighted work without authority from the copyright owner during the term of the copyright, infringes the copyright.

## DEFENSES TO INFRINGEMENT

While Defendant admits to copying, it claims it did so with Plaintiff's consent or, alternatively, that its use was what is known as "fair use," which, under certain circumstances, allows for copying for criticism, comment, new reporting, teaching, scholarship, or research.  Plaintiff denies that Defendant was authorized to use the work or that it engaged in fair use.

**Authority**

Ninth Circuit Model Civil Jury Instructions 17.0 (2007)

COURT INSTRUCTION NO. 55

## COPYRIGHT—DEFINED

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to:

1.      Authorize, or make additional copies, or otherwise reproduce the copyrighted work in copies

2.      Recast, transform, adapt the work, that is, prepare derivative works based upon the copyrighted work;

3.      Distribute copies of the copyrighted work to the public by sale or other transfer;

4.      Perform publicly a copyrighted literary work, dramatic work, or motion picture; and

5.      Display publicly a copyrighted literary work, dramatic work, pictorial work, graphic work, or the individual images of a motion picture.

It is the owner of a copyright who may exercise these exclusive rights to copy. The term "owner" includes the author of the work, an assignee, or an exclusive licensee. In general, copyright law protects against the production, adaptation, distribution, performance, or display of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.  Even though one may acquire a copy of the copyrighted work, the copyright owner retains rights and control of that copy, including uses that may result in additional copies or alterations of the work.

**Authority**

Ninth Circuit Model Civil Jury Instructions 17.1 (2007)

17 U.S.C. §106

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

COURT INSTRUCTION NO. 56

### COPYRIGHT—SUBJECT MATTER—GENERALLY

The photograph in this trial is known as a pictorial work and graphic works, such as two-dimensional and three-dimensional works of fine, graphic and applied art, photographs, and prints and art reproductions, and motion picture stills.

You are instructed that a copyright may be obtained in the photograph at issue.

This work can be protected by the copyright law.  Only that part of the work comprised of original work of authorship fixed in any tangible medium of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device is protected by the Copyright Act.

**Authority**

Ninth Circuit Model Civil Jury Instructions 17.2 (2007)

17 U.S.C. § 102

57

COURT INSTRUCTION NO. 57

**COPYRIGHT INFRINGEMENT—ELEMENTS—OWNERSHIP AND COPYING**

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On Plaintiff's copyright infringement claim, Plaintiff has the burden of proving both of the following by a preponderance of the evidence:

1.      Plaintiff is the owner of a valid copyright; and

2.      Defendant copied original elements from the copyrighted work.

If you find that Plaintiff has proved both of these elements, your verdict should be for Plaintiff.  If, on the other hand, Plaintiff has failed to prove either of these elements, your verdict should be for Defendant.

**Authority**

Ninth Circuit Model Civil Jury Instructions 17.4 (2007)

17 U.S.C. § 501(a)-(b)

COURT INSTRUCTION NO. 58

**COPYRIGHT INFRINGEMENT—OWNERSHIP OF VALID COPYRIGHT—DEFINITION**

Plaintiff is the owner of a valid copyright in the photograph if Plaintiff proves by a preponderance of the evidence that:

1.      Plaintiff's work is original; and

2.      Plaintiff is the author or creator of the work, or received a transfer of the copyright or received a transfer of the right to copy, reproduce, and make derivative works of these works.

A person who holds a copyright may obtain a certificate of registration from the Copyright Office of the Library of Congress. This certificate is sufficient to establish the facts stated in the certificate, unless outweighed by other evidence in this case.

The evidence in this case includes Exhibit ___, a certificate of copyright registration from the Copyright Office for the Bella Image. You are instructed that the certificate is prima facie evidence that there is a valid copyright in the photograph.

**Authority**

Ninth Circuit Model Civil Jury Instructions 17.5 (2007)

17 U.S.C. §§ 201-205

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

59

COURT INSTRUCTION NO. 59

**COPYRIGHT INTERESTS—ASSIGNEE**

In this case, Plaintiff does not claim to be the creator of the copyright at issue. Instead, Plaintiff claims that it received the copyright by virtue of assignment from the work's creators so that Plaintiff is now the assignee of the copyright.

A copyright owner may transfer, sell, or convey to another person all or part of the owner's property interest in the copyright; that is, the right to exclude others from copying the work. The person to whom the copyright is transferred, sold, or conveyed becomes the owner of the copyright in the work.

To be valid, the transfer, sale, or conveyance must be in writing. The person to whom this right is transferred is called an assignee. The assignee may enforce this right to exclude others in an action for copyright infringement.

**Authority**

Ninth Circuit Model Civil Jury Instructions 17.10 (2007)

17 U.S.C. § 201(d)(1)

COURT INSTRUCTION NO. 61

## COPYRIGHT INFRINGEMENT—COPYING—LICENSE

An owner of a copyrighted work may grant a person the right to exploit any of the rights comprised in the copyright, such as the right to reproduce, distribute, or make derivative works of a copyrighted work.  This type of agreement is a called a license agreement.  The owner of the copyrighted work is called a licensor and the person to whom the right to exploit any of the rights comprised in the copyright is called a licensee.  The licensee's rights to exploit any of the rights comprised in the copyright may be limited by the terms of the license agreement.  A licensee infringes the owner of the copyright's copyright if its use exceeds the scope of the rights granted it in the license agreement.

**Authority**

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989) ("A licensee infringes the owner's copyright if its use exceeds the scope of its license.")

COURT INSTRUCTION NO. 62

## COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT

An infringement is considered willful when Plaintiff has proved both of the following elements by a preponderance of the evidence:

1.    Defendant engaged in acts that infringed the copyright; and

2.    Defendant knew that those acts infringed the copyright.

**<u>Authority</u>**

Ninth Circuit Model Civil Jury Instructions 17.27 (2007)

1    COURT INSTRUCTION NO. 63

2

3                          **COPYRIGHT—DAMAGES**

4

5        If you find for Plaintiff on Plaintiff's copyright infringement claim, you must

6    determine Plaintiff's damages.  Plaintiff is entitled to recover the actual damages

7    suffered as a result of the infringement.  In addition, Plaintiff is also entitled to recover

8    any profits of Defendant attributable to the infringement.  Plaintiff must prove damages

9    by a preponderance of the evidence.

10

11   **Authority**

12   Ninth Circuit Model Civil Jury Instructions 17.22 (2007)

13   17 U.S.C. § 504

1   COURT INSTRUCTION NO. 64

2

3                    **COPYRIGHT—DAMAGES—ACTUAL DAMAGES**

4

5          The copyright owner is entitled to recover the actual damages suffered as a result

6   of the infringement.  Actual damages means the amount of money adequate to

7   compensate the copyright owner for the reduction of the fair market value of the

8   copyrighted work caused by the infringement.  The reduction of the fair market value of

9   the copyrighted work is the amount a willing buyer would have been reasonably required

10  to pay a willing seller at the time of the infringement for the actual use made by

11  Defendant of Plaintiff's work.  That amount also could be represented by the lost license

12  fees Plaintiff would have received for Defendant's unauthorized use of Plaintiff's work.

13

14  **<u>Authority</u>**

15  Ninth Circuit Model Civil Jury Instructions 17.23 (2007)

16  17 U.S.C. § 504(b)

17

18

19

20

21

22

23

24

25

26

27

28

COURT INSTRUCTION NO. 68

**Elements and Burden of Proof – Trade Dress (15 U.S.C. § 1125(a)(1))**

On B.B. Dakota's claim for trade dress infringement, B.B. Dakota has the burden of proving by a preponderance of the evidence each of the following elements:

1.    B.B. Dakota's jacket design is distinctive;

2.    B.B. Dakota owns the jacket design as trade dress;

3.    B.B. Dakota's jacket design is nonfunctional; and

4.    Summit used B.B. Dakota's jacket design without the consent of B.B. Dakota in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Summit's product.

If you find that each of the elements on which B.B. Dakota had the burden of proof has been proved, your verdict should be for the [sic] B.B. Dakota on this claim.  If, on the other hand, B.B. Dakota has failed to prove any of these elements, your verdict should be for Summit on this claim.

**Authority**

Ninth Circuit Model Civil Jury Instructions 15.6 (2010)

300781838.1