JS-6

1  SHEPPARD, MULLIN, RICHTER & HAMPTON llp
      A Limited Liability Partnership
2     Including Professional Corporations
   JILL M. PIETRINI (Cal. Bar No. 138335)
3      jpietrini@sheppardmullin.com
   JAMES E. CURRY (Cal. Bar No. 115769)
4      jcurry@sheppardmullin.com
   PAUL A. BOST (Cal. Bar No. 261531)
5      pbost@sheppardmullin.com
6  1901 Avenue of the Stars, Suite 1600
   Los Angeles, California  90067-6055
7  Telephone:   (310) 228-3700
   Facsimile:   (310) 228-3701
8
   *Attorneys for Plaintiff*
9  SUMMIT ENTERTAINMENT, LLC

10

11              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
12                     WESTERN DIVISION

13

| Summit Entertainment, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>B.B. Dakota, Inc.,<br><br>    Defendant. | Case No.  CV-10-4328-GAF (RZx)<br><br>**STIPULATED JUDGMENT AND PERMANENT INJUNCTION** |
|---|---|

     IT IS HEREBY STIPULATED by and between plaintiff Summit Entertainment, LLC, a Delaware limited liability company ("Summit"), and defendant B.B. Dakota, Inc., a California corporation ("B.B. Dakota"), that a Judgment shall be entered to fully and finally dispose of this action and that the Judgment be as follows:

     WHEREAS, Summit is the owner of all right, title and interest including common law rights, in the marks TWILIGHT, TWILIGHT (Stylized), THE TWILIGHT SAGA,

-1-

TWILIGHT TRACKER, and BELLA, including U.S. Trademark Registration Nos. 3,756,560 and 3,793,131, among others, which are valid and enforceable (collectively, the "TWILIGHT Marks"). Summit's TWILIGHT (Stylized) mark is shown below:

twilight

WHEREAS, Summit is the producer and owner of the rights derived from or associated with the motion pictures *Twilight, The Twilight Saga: New Moon, The Twilight Saga: Eclipse, The Twilight Saga: Breaking Dawn –Part 1*, and *The Twilight Saga: Breaking Dawn – Part 2* (collectively "the *Twilight* Motion Pictures").

WHEREAS, Summit is the owner of Copyright Registration Nos. PA 1-616-599; PA 1-649-176; PA 1-653-512; Pau 3-466-936; Pau 3-530-680; VA 1-649-177; VA 1-649-179; VA 1-688-952; VA 1-688-954; VA 1-688-955; VA 1-688-958; VA 1-688-960; VA 1-688-963; VA 1-689-425; VA 1-689-427; VA 1-689-468; VA 1-689-491; VA 1-689-492; VA 1-689-494; VA 1-689-865, which are valid and enforceable. Summit is the owner of the copyright in the Bella Trading Card, Reg. No. VA0001723118 (the "Bella Image").

WHEREAS, the TWILIGHT Marks and Bella Image are referred to collectively herein as the "Twilight Intellectual Property."

WHEREAS, on June 11, 2010, Summit filed a Complaint against BB Dakota, as well as ModCloth, Inc. ("ModCloth") and Metropark USA, Inc. ("Metropark") (collectively, with B.B. Dakota, "Defendants"), in the United States District Court for the Central District of California captioned *Summit Entertainment, LLC v. B.B. Dakota, Inc., et al.*, and which was assigned Case No. CV 10-4328 GAF (RZx), seeking damages and injunctive relief for false designation of origin, trademark infringement, federal trademark dilution, copyright infringement, and unfair competition (the "Civil Action"). Summit alleged that Defendants were using the TWILIGHT Marks and the BELLA Image in interstate commerce in conjunction with their sale of particular jackets (collectively, the

1  "Jacket") without the consent of Summit and that such use infringed Summit's rights in
2  both such trademark and image.
3     WHEREAS, on August 6, 2010, each Defendant filed their respective Answers to
4  the Complaint. B.B. Dakota denied all wrongdoing alleged in the Complaint and filed
5  Counterclaims against Summit, seeking damages and injunctive relief for false designation
6  of origin and unfair competition (the "Trade Dress Counterclaims") and seeking
7  cancellation of Summit's registration of TWILIGHT, Reg. No. 3,756,560 (the "Trademark
8  Cancellation Claim").
9     WHEREAS, on August 27, 2010, Summit filed its Answer to the Trade Dress
10 Counterclaims and the Trademark Cancellation Claim.
11    WHEREAS, on March 1, 2011, based on Summit's and BB Dakota's stipulation
12 and submission to the Court, the Court dismissed the Trademark Cancellation Claim with
13 prejudice.
14    WHEREAS, on May 9, 2011, Metropark filed a suggestion of bankruptcy with the
15 Court, staying the Civil Action as pertains to it.
16    WHEREAS, on September 16, 2011, pursuant to the terms of a settlement
17 agreement entered into between Summit and ModCloth, the Court ordered the dismissal of
18 Summit's claims against ModCloth with prejudice.
19    WHEREAS, on November 14, 2011, pursuant to the terms of a stipulation filed by
20 Summit and Metropark, the Court ordered the dismissal of Summit's claims against
21 Metropark without prejudice.
22    WHEREAS, Summit and B.B. Dakota, without any admission of liability on the
23 part of BB Dakota, have entered into a Settlement Agreement dated June 14, 2012 (the
24 "Agreement") with the mutual intention of resolving all disputes between them which arise
25 from the allegations of the Complaint; and
26    WHEREAS, this Court has jurisdiction over the subject matter of this controversy
27 pursuant to 15 U.S.C. § 1121(a) (Lanham Act jurisdiction), 17 U.S.C. § 501 (Copyright
28

Act jurisdiction), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338(a) (trademark and copyright jurisdiction) and 28 U.S.C. § 1338(b) (unfair competition jurisdiction);

THE COURT HEREBY ORDERS, ADJUDGES AND DECREES:

1. <u>Permanent Injunction</u>. B.B. Dakota and its past and present officers, directors, servants, employees, representatives, successors, assigns, attorneys and agents, and all persons in active concert or participation with B.B. Dakota or with any of the foregoing, hereby agree to permanently refrain from:

(a) Manufacturing, transporting, promoting, importing, advertising, marketing, publicizing, distributing, displaying, offering for sale or selling any good or service under any of the TWILIGHT Marks or any other mark, name, symbol, design or logo that is likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any goods or services that BB Dakota caused to enter the stream of commerce are sponsored, licensed, or endorsed by Summit, are authorized by Summit, or are connected or affiliated with Summit, or the *Twilight* Motion Pictures;

(b) Manufacturing, transporting, promoting, importing, advertising, marketing, publicizing, distributing, displaying, offering for sale or selling any good or service under any of the TWILIGHT Marks or any other mark, name, symbol, design or logo that is confusingly similar to or a reproduction, counterfeit, copy, or colorable imitation of, or incorporates, the TWILIGHT Marks;

(c) Falsely implying Summit's endorsement of any of B.B. Dakota's commercial activities, B.B. Dakota's goods or services, or B.B. Dakota's business; and representing that Summit has endorsed, sponsored, licensed, approved, or is affiliated with B.B. Dakota or B.B. Dakota's products or that B.B. Dakota's products are affiliated or connected with the *Twilight* Motion Pictures;

(d) Seeking to register any of the TWILIGHT Marks or any other mark, name, symbol, design or logo which is likely to cause confusion or to cause mistake or to

deceive persons into the erroneous belief that the businesses, goods or services of BB Dakota are sponsored or endorsed or authorized by Summit or are connected or affiliated in some way with Summit, or the *Twilight* Motion Pictures;

  (e) Copying, distributing or displaying any copyrighted images, artwork photography, stills or clips from *Twilight* Motion Pictures or trailers therefor, or any images, artwork, photography, stills or clips substantially similar thereto;

  (f) Copying, distributing or displaying the Bella image or any image, artwork, or other work substantially similar thereto; and

  (g) Assisting, inducing, aiding or abetting any person or business entity in engaging in or performing any of the activities referred to in sub-paragraphs (a) to (f), inclusive, above.

  2. <u>Dismissal of Summit's Dilution Claim</u>.  The parties shall stipulate to the dismissal with prejudice of Summit's claim for dilution of its TWILIGHT trademark, as provided for in the Judgment.

  3. <u>Delivery and Destruction of Infringing Articles</u>.  Within ten (10) court days of the Parties' entry of this Agreement, BB Dakota shall: (a) destroy, erase or alter all labels, tags, packaging, boxes, advertising materials, marketing materials, and any other physical objects in its possession, custody, or control, including the so-called "lookalike hangtag" or any version of it that creates the appearance of an association with the *Twilight* Motion Pictures, so as to eliminate all uses of the Twilight Intellectual Property; and (b) delete or alter all electronic media under its control (including, without limitation, web pages, electronic tags, and metatags) so as to remove all uses of the Twilight Intellectual Property.

  4. <u>Proof of Compliance</u>.  Within fourteen (14) court days of the Court's entry of the Judgment, B.B. Dakota shall serve upon Summit a declaration under penalty of perjury that it has complied with the terms of the Judgment and the Agreement, including the measures described in Paragraph 3 *supra*

5. <u>Attorneys' Fees and Costs</u>. Each party shall bear its own attorneys' fees and costs arising out of, related to, or incurred in this action, except as provided in the Agreement and in paragraphs 6-7 *infra*.

6. <u>Violation of Judgment – Contempt of Court</u>. In the event that any part of this Judgment is violated by B.B. Dakota, or by any of its present or former officers, directors, agents, servants, employees, or representatives, or by any person in active concert and participation with B.B. Dakota that receives notice of this Judgment, Summit may file and serve a motion for contempt seeking damages, attorneys' fees, expert witness fees, and/or other appropriate relief.

7. <u>Violation of Judgment -- Prevailing Party Fees and Costs</u>. In an action or proceeding based upon an allegation that a party has violated this Judgment, the prevailing party shall be entitled to recover all of its reasonable attorneys' fees, expert witness fees, and other costs incurred in connection with the action or proceeding. This paragraph shall not be construed to limit any party's rights, remedies or procedural options.

8. <u>Binding Effect</u>. This Judgment shall be binding upon and inure to the benefit of the parties and all successors, assigns, officers, directors, members, agents, and other persons who are in active concert or participation with anyone described herein, who receive actual notice of this Judgment by personal service or otherwise.

9. <u>Continuing Jurisdiction</u>. This Court shall retain jurisdiction to enforce this Judgment and the Agreement.

10. <u>No Territorial Limit</u>. This Judgment shall be enforceable against any of B.B. Dakota for any acts that violate this Judgment that occur inside and/or outside of the United States of America.

///

///

11. **Final Judgment.** This Judgment shall be a final adjudication of all claims alleged by Summit in this action, and this Judgment is not appealable. This Judgment is not an adjudication of Summit's claims against Metropark as relate to the Jacket or this Civil Action.

SO ORDERED.

Date: July 26, 2012

*[Signature]*

United States District Court Judge

-7-